**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Eileen C. GARCIA, Defendant–Appellant.**

**No. 96CA1516.**

Colorado Court of Appeals, Div. III.

Sept. 3, 1998.

Rehearing Denied Oct. 22, 1998.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Lauren A. Edelstein, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Eileen C. Garcia, appeals from the judgment of conviction entered upon a jury verdict finding her guilty of child abuse

resulting in death. She also appeals the sentence imposed. We affirm.

On the day of the victim's death, the victim's mother brought the victim, a 19-month old child, and her brother to defendant's house for child care. Shortly thereafter, the victim's mother received a telephone call informing her that the victim had been injured in a fall from a playground slide. She died at the hospital several hours later. An autopsy determined the cause of death to be blunt force blows to the victim's head. Evidence of retinal hemorrhaging, consistent with shaken baby syndrome, also was present.

Defendant was charged with the offense at issue, but she continued to maintain that the injury to the victim's head was the result either of a fall from the slide earlier that day or accidental injuries suffered a few days before.

During the jury's deliberations, several notes were sent to the trial court, some of which stated that one juror had commented on deliberations before the close of the trial, would not follow the court's instructions, and had refused to deliberate.

The trial court, after a hearing in chambers, discharged the juror and replaced him with an alternate juror. The conviction at issue here followed.

## I.

Defendant contends that the trial court erred in dismissing the juror after the jury had begun its deliberations. She argues that the trial court did not follow the required procedure to dismiss the juror, improperly interviewed the jury foreperson in taking such action, and erroneously denied defendant's motion for a mistrial following the juror's dismissal. We disagree.

Under §16–10–106, C.R.S.1997, a trial court has authority to remove a juror who "by reason of illness or other cause becomes unable to continue until a verdict is reached." Section 16–10–105, C.R.S.1997, allows the court to use alternate jurors to replace those jurors who become "unable or disqualified to perform their duties." See also Crim. P. 24(e). *Compare People v. Carrillo*, 946 P.2d 544 (Colo.App.1997) (*cert. granted* November 24, 1997) (both §16–10–105 and Crim. P. 24(e) permit a trial court to replace a juror with an alternate after jury deliberations have commenced) *with People v. Montoya*, 942 P.2d 1287 (Colo.App.1996) (interpreting §16–10–105 to forbid the replacement of a juror with an alternate after jury has retired to consider its verdict).

### A.

Defendant does not challenge the authority of the trial court to remove a juror for illness or other cause and replace him or her with an alternate juror after deliberations have begun. Instead, defendant contends that, because the prosecutor did not move for a mistrial under §16–10–103(3), C.R.S.1997, the juror was improperly dismissed. We disagree.

Section 16–10–103(3) provides:

If *either party* desires to introduce evidence of the incompetency, disqualification, or prejudice of any prospective juror who upon the voir dire examination appears to be qualified, competent, and unprejudiced, such evidence shall be heard, and the competency of the juror shall be determined, by the court, out of the presence of the other jurors, but this action cannot be taken after the jury has been sworn to try the case except upon a motion for mistrial. (emphasis added)

According to its plain language, §16–10–103(3) governs a challenge for cause—by either the prosecutor or the defendant—to a prospective juror. This provision assumes that if a juror is disqualified because of evidence later discovered by a party to the case, because such challenge may arise after the jury has been sworn, a mistrial may be required. In that regard, such action raises double jeopardy concerns. *See People v. Paulsen*, 198 Colo. 458, 601 P.2d 634 (1979) (discharge of the jury without a verdict is equal to an acquittal and bars a retrial unless the defendant so consented or legal necessity required it); *Maddox v. State*, 230 Ind. 92, 102 N.E.2d 225 (1951) (removal of one juror is a breakdown of the original jury).

■ These concerns are alleviated by the requirement that a party seeking to present evidence that a juror is disqualified to serve must move for mistrial. If evidence supporting a juror's disqualification is offered as part of a motion for mistrial, a defendant is afforded protection against bad faith conduct by the prosecution because the court is required to determine if good cause exists to discharge the juror and to declare a mistrial if manifest necessity requires it to do so. *See People v. Schwartz,* 678 P.2d 1000 (Colo. 1984) (if manifest necessity requires mistrial, double jeopardy does not prevent retrial). Similarly, if such challenge is brought by the defendant in the same manner, the defendant waives his or her double jeopardy protection and cannot force a mistrial to avoid prosecution. *See People v. Baca,* 193 Colo. 9, 562 P.2d 411 (1977) (defendant's motion for mistrial waived double jeopardy protection). Thus, this statute ensures that double jeopardy concerns do not prevent a retrial if circumstances presented by either party necessitate the removal of a juror for cause.

However, here, neither the prosecutor nor the defendant challenged the juror's presence on the panel during the selection process or during the jury's deliberations. Indeed, because of the secret nature of deliberations, evidence of the juror's alleged misconduct was not discovered, nor was it discoverable, by either party. Therefore, since neither party brought the juror's misconduct to the court's attention, the double jeopardy concerns reflected in §16–10–103(3) were not implicated, and the statute was not applicable. Thus, the prosecution was not required to move for mistrial before the court could consider whether to dismiss the juror.

### B.

Similarly, we disagree with defendant that the court did not conduct a proper inquiry to determine whether the juror was unable to follow the court's instructions. She argues that, under Crim. P. 24(b)(2), a trial court, in determining a challenge for cause, may interview only the challenged juror and that, therefore, the court's dismissal of the juror

based on its inquiry of the jury foreperson was improper.

Crim. P. 24(b)(2) provides, in pertinent part, that:

> If *either party* desires to introduce evidence, other than the sworn responses of the prospective juror, for the purpose of establishing grounds to disqualify or challenge the juror for cause, such evidence shall be heard and all issues related thereto shall be determined by the court out of the presence of the other prospective jurors. (emphasis added)

■ Thus, and similar to §16–10–103(3), this rule is applicable only when a party desires to introduce extrinsic evidence in support of its challenge for cause to a prospective juror. Accordingly, even if we were to assume that this rule would preclude an interview with anyone other than the challenged juror, here, the challenge to the juror was not initiated by either the prosecutor or the defendant. Thus, the trial court's inquiry was not improper.

### C.

Defendant argues that the court did not have sufficient grounds to dismiss the juror because the juror had not demonstrated an inability to follow the court's instructions. We disagree.

■ A defendant is not entitled to a particular juror. Rather, he or she is entitled to a trial by a fair and impartial jury. *People v. Evans,* 674 P.2d 975 (Colo.App.1983).

■ As discussed, once the jury is sworn, a juror subsequently may be dismissed if he or she becomes unable or disqualified to perform his or her duties. Sections 16–10–106 & 16–10–105; Crim. P. 24(e). The trial court is in the best position to evaluate whether a juror is unable to serve, and its decision to excuse a juror will not be disturbed absent a gross abuse of its discretion. *People v. Christopher,* 896 P.2d 876 (Colo.1995).

The trial here occurred prior to the effective dates of extensive rules changes concerning jury reform. Accordingly, under the rules in effect here, the court instructed the prospective jurors at the beginning of voir

dire that they were not to speculate about the case or discuss it in any way. When the panel was sworn, the court again instructed them that they were not to discuss the case among themselves during the course of the trial and were to reach their decision only through their final deliberations.

Shortly after the jury began its deliberations, the court received a note stating that one juror was refusing to accept the expert testimony as evidence and had stated that he would not follow the court's instructions. The court responded by instructing the jury to review the instructions.

The jury later sent two notes requesting certain items, not relevant here. The requests were denied.

Subsequently, the jury sent a note stating that the same juror who had refused to accept the expert testimony had told several jurors, beginning two or three days into the trial, that he felt there would be a hung jury. The court decided that it was necessary to hold a hearing to determine whether the juror had refused to follow the court's instructions by commenting on deliberations prior to the close of the case. The court acknowledged the possibility that the situation could be that of a deadlocked jury for which the jury would be instructed accordingly.

A hearing was held in chambers with the jury foreperson and both parties present. Before questioning the foreperson, the court informed the parties that the sole purpose of the meeting was to inquire whether one juror had violated the court's instructions. Also, when the jury foreperson was brought into chambers, the court instructed her not to comment on any discussions the jurors may have had concerning defendant's guilt or innocence or anything else concerning their deliberations. In response to the court's inquiry, the foreperson stated that the juror had said to several other jurors, on more than one occasion during the course of the trial, comments of the nature that, "I know how you are going to vote and I have a feeling this is going to be a hung jury."

At defense counsel's request, the court then brought in the challenged juror and asked him if he wanted to comment on the reports the court had received from the rest of the jury that he had commented on deliberations prior to the close of the trial. The juror replied that he had said to other jurors during the trial only that he "hoped that it wasn't a hung jury because I didn't have time to sit around and wait and just trying to second guess, wondering what everybody was thinking more than I could think on the second count. So I don't see how that could be some kind of crime. . . ."

The trial court then found that the juror did not deny the allegations that he had disobeyed the court's instructions not to speculate about or·discuss the case prior to deliberations, and discharged him on those grounds. Defendant then moved for a mistrial, which was denied.

1.

■ Evidence that a juror has commented on the outcome of the deliberations prior to the time the jury begins its deliberations, or is unable to fulfill the oath taken as juror, or refuses to follow the court's instructions may establish good cause for dismissal. *See United States v. Vega,* 72 F.3d 507 (7th Cir.1995) (disobeying court's instructions constitutes legitimate basis for removal); *People v. Guzman,* 66 Cal.App.3d 549, 136 Cal.Rptr. 163 (1977) (showing that deliberating juror cannot keep an open mind is good cause for dismissal); *cf. Morgan v. People,* 624 P.2d 1331 (Colo.1981) (potential juror who gives fair indication that he or she will not follow the court's instruction should be removed from panel).

■ Also, if the record demonstrates that the juror has deliberately disobeyed the instructions of the trial court, then the court has the authority and the duty to remove that juror. *See United States v. Thomas,* 116 F.3d 606 (2d Cir.1997) (deliberating juror who intends to nullify applicable law is subject to dismissal).

Defendant does not directly challenge the proposition that a juror's refusal to follow the court's instructions on the law is a proper basis for removal of that juror, even during deliberations, but asserts that the record

does not support the court's finding of such misconduct. Specifically, defendant interprets the juror's explanation of his comments during the trial simply as an expression of "hope" to the other jurors that the case would not end in a hung jury. Such innocuous comments, she maintains, simply cannot constitute juror misconduct.

However, as discussed, it is the trial court, not this court, that is in the best position to hear the answers given during the course of an inquiry such as here, and to observe the demeanor and body language of the person in evaluating and determining credibility. *Cf. People v. Rodriguez*, 914 P.2d 230 (Colo. 1996) (court observes demeanor and discerns truthfulness of potential jurors); *People v. Russo*, 713 P.2d 356 (Colo.1986) (resolution of a challenge for cause ultimately turns on court's assessment of such intangibles as the juror's credibility and attitude).

■ Here, the trial court had already received a note from the jury that this juror had stated during trial that he knew how each was going to vote and felt that the trial would result in a hung jury. Then, having heard the testimony of the jury foreperson to that effect, the trial court asked the juror directly whether he had commented on deliberations during trial by indicating his beliefs regarding how he and the other jurors would vote on the case. In that context, the court determined that the juror, by his response, effectively admitted that he had discussed the outcome of the trial before deliberations.

On this record, we have no basis to disagree with the trial court's assessment that misconduct had occurred. Indeed, the juror's explanation that, although he did speak to the other jurors about the case, he was "just trying to second guess" and "wondering what everybody was thinking," clearly reflects that he had attempted to engage the other jurors in conversation relating to deliberations and had told other members of the jury during the trial that he already knew how they were going to vote and felt that it would be a hung jury.

In light of all the circumstances presented, we conclude there is adequate record support for the trial court's determination that the juror had commented on deliberations prior to the close of the case and had attempted to engage other jurors in discussing the outcome.

### 2.

Nevertheless, defendant argues, the court's inquiry did not go far enough. Specifically, she asserts, the court should have made an inquiry not just to determine that there was a meritorious reason to discharge the juror, but to eliminate improper reasons, such, she claims, as here, where the jury seemed to be at odds with a dissenting juror. We disagree.

■ Courts and commentators agree that the secrecy of jury deliberations is essential to the proper functioning of juries. Thus, when reports of juror misconduct arise during deliberations, a court is confronted with a delicate and complex task: It must balance its duty to dismiss a juror for misconduct and its duty to safeguard the secrecy of jury deliberations. *See United States v. Thomas, supra.*

■ Here, the trial court carefully limited its inquiry only to those circumstances surrounding the alleged misconduct and precluded investigation into any vote the jury might have taken or any deliberations that might have occurred. The court also did not ask the jury foreperson or the challenged juror to express their personal opinions or their views concerning the law relevant to the issues of the case.

In *United States v. Thomas, supra,* during the jury's deliberations, the trial court was notified that one juror appeared predisposed to acquit the defendants. After interviewing the members of the jury, the court dismissed the juror, finding that he was refusing to convict because of preconceived reasons and was ignoring the evidence. On appeal, while agreeing that under such circumstances just cause exists to dismiss a deliberating juror, the court determined that to protect the privacy of a jury's deliberative process, a trial court that is seeking to determine whether misconduct has occurred must be strictly restricted in regard to the extent of its investi-

gation into the reasons underlying a juror's position on the merits of a case.

It is precisely for that reason that the trial court's limited inquiry here was appropriate. In order to determine whether the juror had disobeyed its instruction not to discuss the case until all the evidence had been presented, there was no need to inquire into the juror's thought processes. Instead, a circumscribed inquiry into those factual and objective circumstances surrounding the alleged misconduct was all that was necessary to establish or disprove that such behavior had occurred. Additionally, and contrary to defendant's contention, once the fact of the juror's misconduct prior to deliberations was established, the question whether the juror was willing or able to deliberate further was not relevant. Hence, the court's careful, limited inquiry was all that was required. *See United States v. Vega, supra* (although evidence existed that dismissed juror was lone dissenting vote on panel, trial court removed him for legitimate reason); *cf. People v. Daoust,* 228 Mich.App. 1, 577 N.W.2d 179 (Mich.Ct.App.1998) (defendant's right to impartial jury is denied if a juror removable for cause is allowed to serve).

### D.

Defendant further argues that, even if the trial court properly removed the juror from the panel, the court erred in denying her motion for mistrial because the conduct of the court in reconstituting the jury panel could not overcome the presumption of prejudice that attaches to such action.

■ A trial court's decision to grant or deny a motion for mistrial lies within its sound discretion, and its decision will not be reversed on appeal absent an abuse of such discretion. *People v. Abbott,* 690 P.2d 1263 (Colo.1984).

■ If a discharged alternate juror replaces a juror who is dismissed or becomes unable to continue deliberations, prejudice to the defendant will be presumed. This presumption may be rebutted by a showing that the court "adopted sufficient procedural safeguards to ensure against prejudice to the defendant as a result of the replacement."

*People v. Burnette,* 775 P.2d 583, 587 (Colo. 1989).

■ Such procedures include an inquiry by the trial court of the remaining jurors as to whether they can disregard their previous deliberations and be receptive to the possibility of the alternate juror asserting a nonconforming view. *People v. Patterson,* 832 P.2d 1083 (Colo.App.1992). These procedures also include questioning the alternate as to his or her activities during the time the jury was deliberating and asking whether the alternate juror still is able to follow the court's instructions. *People v. Montoya, supra.*

■ Here, after the jury retired to begin its deliberations, the court discharged the alternate jurors, admonishing them not to discuss the case with anyone until after a verdict was reached because they still might be called to deliberate if any of the jurors was unable to complete his or her duty.

After dismissing the challenged juror, the court recalled one of the alternates and inquired whether she had discussed the case with anyone or had learned anything new from any other source since being discharged. The alternate juror answered in the negative. The court also asked about her activities since she had been discharged and questioned her concerning her ability to deliberate with the other jurors.

After satisfying itself that the alternate juror was able to deliberate, the trial court queried the other jurors as to whether they could begin deliberations anew. Each juror responded affirmatively.

The court then allowed both sides to argue the proposal to reconstitute the jury. After their arguments, the court determined that the jurors were able to deliberate with open minds and denied defendant's motion for mistrial. Before allowing the jurors to begin deliberations it instructed them again to start anew and to disregard any earlier deliberations. This record demonstrates that the trial court satisfied the procedures required to rebut the presumption of prejudice that arises when an alternate juror is substituted during jury deliberations and, therefore, the

court did not abuse its discretion in denying defendant's motion for mistrial.

## II.

Defendant also contends that the trial court erred in allowing the prosecution to present evidence of a prior episode of anger. She argues that such evidence, under CRE 404(a)(1), is inadmissible because it was offered to prove that she acted in conformity with that episode in committing the offense with which she was charged. We disagree.

Under CRE 404(a)(1), if evidence of a pertinent trait of a defendant's character is presented by the accused, the prosecution may offer evidence to rebut that trait.

Here, considering the record as a whole, we perceive no error in the admission of a neighbor's testimony during rebuttal that, on one occasion, defendant, when her car would not start, shook the steering wheel, kicked the tires, hit the hood, and yelled at her boyfriend. That defendant was intoxicated at the time of this incident went to the weight of the evidence, not its admissibility.

Defendant, during cross-examination of the prosecution's witnesses, had elicited testimony that she was gentle to her children and that she had never lost her temper in front of the witnesses. Because of this evidence, the trial court appropriately admitted the prosecution's testimony offered to rebut the character trait of peacefulness set forth by defendant.

## III.

Defendant contends that her sentence is excessive because the trial court inappropriately focused on aggravating factors and did not consider mitigating factors in imposing a 40-year sentence. We do not agree.

A sentence that is within the range required by law, based on appropriate considerations, and factually supported by the record of the case will be upheld. *People v. Gonzales*, 926 P.2d 153 (Colo.App.1996).

A sentencing court has the discretion to impose a sentence that protects the interests of both society and the defendant. In imposing sentence, the court must consider and weigh mitigating and aggravating factors without maximizing the value of any one factor. *People v. Cohen*, 617 P.2d 1205 (Colo.1980).

Here, defendant was subject to a sentence of 16 to 48 years. Section 18–1–105(9)(d)(I), C.R.S.1997. Defendant's sentence is within the range required by statute.

Further, the trial court made extensive and detailed findings in imposing this sentence. Specifically, the court stated that it took into consideration the sentencing factors under §18–1–102.5, C.R.S.1997. It also stated that it considered defendant's mental health as a mitigating factor. In contrast, the court found, as aggravating factors, that defendant had a prior history of violence, that she had not taken responsibility for her problems with alcohol and anger, and that she had not informed the victim's parents concerning her criminal record or that she was driving under a suspended license so that the parents could have made an informed decision concerning the victim's care. The court further noted the "devastating" impact of the crime on the victim's family and the fact that defendant had not sought immediate help for the victim's injuries even though defendant had asserted the injuries were accidental. The record shows that the trial court appropriately considered both mitigating and aggravating factors in imposing sentence and, thus, we perceive no error.

The judgment and sentence are affirmed.

PLANK and MARQUEZ, JJ., concur.