The PEOPLE of the State of
Colorado, Petitioner,

v.

Stanton P. HARDING, Respondent.

No. 03SC803.

Supreme Court of Colorado,
En Banc.

Jan. 10, 2005.

Rehearing Denied Jan. 31, 2005.*

* Justice KOURLIS, Justice RICE and Justice     COATS would grant the Petition.

John W. Suthers, Acting Attorney General, Roger G. Billotte, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Ann M. Aber, Deputy State Public Defender, Denver, for Respondent.

Justice BENDER delivered the Opinion of the Court.

In this post-conviction appeal, we affirm the court of appeals' decision to grant Stanton P. Harding a new trial because of a defective Curtis Advisement where the People did not produce any evidence at the post-conviction proceedings to attempt to establish that Harding's waiver of the right to testify was knowing, voluntary and intelligent. *People v. Harding,* No. 02CA0350, slip op., 2003 WL 22211273 (Colo.App. Sept.25, 2003) (not selected for official publication pursuant to C.A.R. 35(f)) (*Harding III* ).

During Harding's trial for sexual assault, the trial court advised him that if he testified, the jury would be instructed to consider his felony conviction as it bears on his character. A felony conviction is not admissible to show character. Therefore, Harding was not properly advised of the impeachment consequences of testifying pursuant to *People v. Curtis,* 681 P.2d 504 (Colo.1984). When a court's advisement is invalid, the prosecution may present evidence at a post-conviction hearing to establish the validity of the waiver irrespective of the defective advisement pursuant to *People v. Blehm,* 983 P.2d 779 (Colo. 1999). In this case, the prosecution failed to present any evidence and instead relied upon the trial record of the invalid Curtis Advisement to establish waiver. Thus, the record of the post-conviction hearing is silent as to what the defendant understood about the potential consequences of testifying. Following the mandates of *Blehm* and *Curtis,* we can not assume that the defendant understood the consequences of waiving this significant right from an invalid Curtis Advisement and therefore find that the prosecution failed to meet its burden to establish the validity of Harding's waiver. Hence, we affirm the court of appeals and remand this case to that court with directions to return it to the trial court for a new trial.

### Facts and Proceedings Below

The People charged Stanton P. Harding, defendant in the trial court and respondent before us, with sexually assaulting a female employee of a store in a shopping mall. A jury convicted him of third degree sexual assault by the use of force, third degree assault, and commission of a crime of violence in April 1996. Harding has a prior felony conviction for sexual assault and did not testify at his trial.

Relevant to this appeal, the trial judge advised Harding about his right to testify.

The judge told Harding that he had a right to testify, that no one could prevent him from testifying, and that if he did testify the prosecution could cross-examine him and ask about his prior felony conviction. He then stated that the jury could consider his prior conviction as it bears "upon his character." After this advisement, Mr. Harding stated it was his intent not to testify.[1]

Harding appealed and the court of appeals affirmed his conviction. *People v. Harding*, 983 P.2d 29 (Colo.App.1998) (*Harding I*). There, Harding argued that he was not adequately advised about his right to testify on his own behalf because the advisement did not conform to this court's holding in *People v. Curtis*. *Harding I*, 983 P.2d at 31. *Curtis* established what is now known as the "Curtis Advisement" and requires the trial court to advise the defendant of several things including that should he testify, the prosecution could ask the defendant about prior felony convictions and the jury could consider any such conviction as "it bears on his credibility." 681 P.2d at 514. However, in Harding's case, the trial court stated that the jury could consider any prior conviction as it bears upon his "character." The court of appeals held that despite this discrepancy, the trial court's advisement "substantially complied with the requirements of *Curtis*" and was "adequate to assure that [Harding] knowingly, voluntarily, and intentionally waived his right to testify." *Harding I*, 983 P.2d at 32.

Harding then appealed to this court. In an order dated August 30, 1999, we granted his petition for certiorari and ordered that the judgment of the court of appeals be vacated and that the court of appeals reconsider Harding's appeal in light of our then recent decision of *People v. Blehm*. In *Blehm*, we affirmed our holding in *People v. Curtis* that a valid waiver of the right to testify must be knowing, voluntary, and intelligent and that the trial court must advise the defendant on the record of the right to testify and the consequences of testifying. 983 P.2d at 797. Particularly relevant to Harding's case, we held that when a defendant's Curtis Advisement is lacking in one of the five *Curtis* elements, the defendant's claim of an invalid waiver of his right to testify should be addressed in a post-conviction proceeding where the prosecution must prove that the waiver was still valid despite the trial court's defective advisement. *Id.* at 792, 797.

Upon remand from this court, the court of appeals reconsidered its judgment of *Harding I* in *People v. Harding*, 17 P.3d 183 (Colo.App.2000) (*Harding II*). The court determined that the use of the term "character" instead of "credibility" rendered Harding's advisement deficient and remanded the case to the trial court for an evidentiary hearing on the validity of his waiver pursuant to the required procedures identified in *Blehm*. *Harding II*, 17 P.3d at 186.

1. The advisement appears as follows in the trial record:

THE COURT: Mr. Harding, I need to advise you of certain rights that you have with respect to testifying in this case. In this proceeding, you understand that you have a right to testify?
THE DEFENDANT: Yes, I do.
THE COURT: All right. And if you want to testify, no one can prevent you from doing so. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: You understand that you may take the witness stand and testify even if it's contrary to the advice of [your attorney]?
THE DEFENDANT: Yes, I do.
THE COURT: And do you understand that if you do testify, the prosecution will be allowed to cross-examine you?
THE DEFENDANT: Yes.
THE COURT: And if you have been convicted of a felony, the prosecutor would be entitled to ask you about that conviction and, therefore, disclose the conviction to the jury. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Do you understand that they can only ask you about convictions and only convictions with felonies, they can't ask you about misdemeanors or other incidents but it has to be confined to felony convictions as far as the previous record is concerned. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: All right. If a——if you were to testify and the prosecution were to bring out a felony conviction on your part, the jury would be instructed to consider the felony conviction only as it bears on your character, you understand that?
THE DEFENDANT: Yes.

The post-conviction court held this hearing in December 2001. A new judge presided over the hearing because the original trial judge had retired. In addition, different counsel appeared on behalf of both the People and Harding. At this hearing, no evidence was introduced other than the trial record. No witnesses testified as to what Harding knew to be the consequences of testifying. The prosecutor argued that the trial court's use of the word "character" instead of "credibility" did not affect the trial judge's determination that the defendant made a valid waiver. In support of this position, the prosecutor argued at the post-conviction hearing that immediately before the trial court's Curtis Advisement, Harding heard argument that his prior bad act could be used to prove his identity but not his character and therefore understood the prejudicial effect that his prior conviction would have if he testified.

After reviewing the record, the post-conviction court concluded that Harding knowingly, intelligently, and voluntarily waived his right to testify. The court reasoned that Harding acknowledged speaking to his attorney about testifying and that a determination was made that he would not testify before receiving his Curtis Advisement. The court stated that the admission of Harding's prior bad act as similar transaction evidence was an event "wholly separate" from his prior conviction for sexual assault and that during his trial, no mention was made of his prior felony conviction for sexual assault. The court then determined that Harding understood the difference between the evidentiary concepts of "character" and "credibility" and concluded that "the defendant was fully aware of his rights and the use of prior felony convictions before he ever discussed the issue with the trial court." He ruled that Harding's waiver was valid and stated that the post-conviction court was in "no better position than [the trial judge] was when he conducted the trial and had the opportunity personally to observe both the defendant and

the interaction of defendant with his counsel."

Harding appealed. A divided panel of the court of appeals held in an unpublished opinion that the prosecution had not met its burden of proof at the post-conviction evidentiary hearing. That court concluded there was insufficient proof that Harding had made a knowing, voluntary, and intelligent waiver of his right to testify and reversed the trial court and ordered a new trial. *Harding III*, slip op. at 8, 2003 WL 22211273. Judge Rothenberg dissented, reasoning Harding understood the consequences of testifying, namely, that "the jury would learn he was a convicted sex offender." *Harding III*, slip op. at 11, 2003 WL 22211273 (Rothenberg, J. dissenting). She argued that to the extent there is a difference between "character" and "credibility," Harding was not misled by this substitution and that to conclude otherwise was contrary to our holding in *Blehm* where we stated that the Curtis Advisement need not conform to a prescribed litany. Thus, despite the failure of the People to produce any evidence at the post-conviction hearing, she claimed that the record supported this finding of waiver and would have affirmed the post-conviction court's finding that Harding made a "voluntary, knowing, and intelligent waiver" of his right to testify. *Id.* at 13–14, 2003 WL 22211273.

We granted the People's petition for certiorari to review the court of appeals' decision in *Harding III*.[2]

## Analysis

### I. Defendant's Right to Testify

We begin our analysis with a summary of our cases that establish a defendant's right to testify and the requirements to determine whether a defendant made a valid waiver of his right to testify. Our cases of *People v. Curtis* and *People v. Blehm* guide our review.

■ In *Curtis*, we recognized that the due process clauses of Amendment XIV of the United States Constitution and Article II,

2. We granted certiorari on the following issue submitted by the people:

Whether the prosecution established that the defendant understood the consequences of the

right to testify, and therefore, made a valid waiver of that right, notwithstanding the trial court's incorrect advisement regarding the consequences of testifying.

section 25 of the Colorado Constitution grant a defendant the fundamental right to testify in his criminal trial. 681 P.2d at 509–11. To ensure that a waiver is voluntary, knowing, and intentional, the trial court must communicate five essential elements to the defendant when making the on-the-record advisement. The advisement must articulate 1) that he has a right to testify, 2) that no one can prevent him from doing so, 3) that if he does testify then the prosecution may cross-examine him and 4) ask about any prior felony convictions, and 5) if a felony conviction is disclosed to the jury then the jury will be instructed to consider the felony as it bears on the defendant's credibility.[3] *Id.* at 514.

■ In *Blehm*, this court re-examined and reaffirmed the central holding of *Curtis*. However, we recognized and held that a defendant's claim of an invalid waiver is "best addressed in post-convictions proceedings" rather than by direct appeal. *Blehm*, 983 P.2d at 792. A defendant is entitled to a post-conviction hearing when his advisement is defective because it lacks at least one of the five essential *Curtis* elements. *Id.* at 792. At this hearing, both parties may present relevant evidence not present in the trial record to establish the validity of the waiver. *Id.* Such a fact-finding hearing is necessary "where facts outside the record may be crucial to understanding whether the defendant knowingly and intelligently waived his right to testify." *Id.* at 791–92. The rationale behind the evidentiary hearing is to provide an opportunity for the prosecution to establish that although an advisement is defective, the defendant nevertheless did understand fully his right to testify and did make a valid waiver. We said that this hearing should determine "whether the defendant was aware that he had a right to testify, whether the defendant knew of the consequences of testi-

fying, and whether the defendant understood that he could testify notwithstanding the contrary advice of counsel." *Id.* at 792.

■ Concerning what the defendant must establish at this hearing, we have "rejected the suggestion that a defendant must prove he was prejudiced by an inadequate advisement in order to prevail" at this post-conviction hearing. *Blehm*, 983 P.2d at 788; *see also People v. Milton*, 864 P.2d 1097, 1101 (Colo.1993); and *People v. Chavez*, 853 P.2d 1149, 1153 (Colo.1993). Thus, the prosecution has the burden of proving that the defendant was not prejudiced by the inadequate advisement, or in other words, the defendant's waiver was valid despite the defective advisement. If after hearing the evidence presented at the post-conviction hearing the court concludes that the defendant's waiver was not voluntary, knowing and intelligent, then the defendant is entitled to a new trial. *Blehm*, at 792.

## II. Application

### A. The Trial Court Advisement

■ With these principles in mind, we examine the advisement given to Harding at his trial. Our review is *de novo* because the validity of a defendant's waiver is a question of law. *Blehm*, 983 P.2d at 792 n. 9.

It is undisputed that the first four elements of Harding's advisement mirror the first four elements of the Curtis Advisement. Harding claims the trial court erred when it advised him about the fifth element. On this point, the court's advisement stated that the jury may consider his prior felony conviction as it bears upon his "character." The trial court did not advise Harding that the jury may only consider his felony conviction as it bears on his "credibility." *See Curtis*, 681 P.2d at 514.

---

**3.** In *Curtis* we said:

A trial court ... should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about

it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. In connection with the privilege against self-incrimination, the defendant should also be advised that he has a right not to testify and that if he does not testify then the jury can be instructed about that right.

*Curtis*, 681 P.2d at 514 (footnote omitted).

The People argue that the trial court's advisement "substantially complied" with the requirements of *Curtis* and that the use of the term "character" in place of "credibility" should not impact the trial court's finding that Harding had voluntarily, knowingly and intelligently waived his right to testify.

This court has previously considered a defective Curtis Advisement where the fifth element, that a defendant's credibility could be impeached with a prior felony conviction, was omitted from the trial court's advisement. In both *Chavez* and *Milton* we reversed convictions because neither defendant had been properly advised.[4] *Chavez*, 853 P.2d at 1152; *Milton*, 864 P.2d at 1101. Like *Milton* and *Chavez*, Harding was not advised that the prosecutor would be able to impeach his credibility with his prior conviction. However, Harding was told that his conviction could be considered by the jury as it bears on his "character." Thus, we consider whether the use of the word "character" instead of the term "credibility" distinguishes Harding's advisement from *Chavez* and *Milton*.

A person's character refers to the nature or "actual disposition" of an individual that may "be properly provable either as evidentiary fact or as an issue." 1A *Wigmore on Evidence*, § 52, at 1147 (Tillers rev.1983). Character concerns one's tendencies to perform in a certain way depending on the circumstances of a given situation.[5] The purpose of introducing evidence of prior bad acts is to prove that the witness acted in a certain way because of the nature of his character. This requires one to assume that since a person acted a certain way in the past, he is more likely to act in the same way again and in fact did so. Due to the potential prejudicial nature of evidence of prior bad acts, this evidence is usually not admissible to prove a defendant engaged in the wrongful conduct at issue.[6]

Credibility, on the other hand, refers to a "quality that makes something (as a witness or some evidence) worthy of belief." *Blacks*

4. John Chavez had a prior felony conviction and did not testify at his trial for burglary. *Chavez*, 853 P.2d at 1151. The trial court informed him of his right to testify or not to testify and that should he testify his four prior felony convictions could be disclosed to the jury by the prosecution. The advisement, however, did not explain the limited purpose for which such felonies could be admitted. Thus, we held that the advisement was defective and misleading and denied Chavez of an opportunity to make a voluntary, knowing and intelligent waiver of his right to testify. *Id.* at 1152. It is arguable that *Chavez* is distinguishable from this case because he was charged as an habitual criminal and therefore could have thought that the admission of a prior felony would be used in the habitual criminal phase of his trial. However, this was not the case in *Milton* where the defendant was not charged as an habitual criminal and we reached the same result. There, Gail Milton did not testify in her trial for reckless manslaughter and second-degree assault. 864 P.2d at 1098. In advising Milton, the trial court did not mention the consequences of testifying, specifically, that the prosecution could impeach the credibility of her testimony with her prior convictions. *Id.* at 1100. Although Milton did not testify, we held that it was the fact that she was not advised about the impact of testifying that established a violation of the waiver requirement identified in *Curtis*. *Milton*, 864 P.2d at 1100. *See also People v. Deskins*, 927 P.2d 368, 370–71 (Colo.1996) (stating that a confusing Curtis Advisement may still be valid where it contains the five essential elements and

informs the defendant that a felony conviction could be used for "credibility purposes").

5. For example, character evidence has been used to show one's tendencies toward: violence, *Lombardi v. Graham*, 794 P.2d 610, 612 (Colo.1990); peacefulness, *People v. Garcia*, 964 P.2d 619, 627 (Colo.App.1998); being a cautious driver, *People v. T.R.*, 860 P.2d 559, 562 (Colo.App.1993); being an "excellent worker," *People v. Jones*, 743 P.2d 44, 46 (Colo.App.1987); immorality, *Wilkinson v. People*, 86 Colo. 406, 412, 282 P. 257, 259 (1929); good moral behavior, *People v. Strean*, 74 P.3d 387, 392 (Colo.App.2002); dishonesty, *Davis v. People*, 871 P.2d 769, 773 (Colo.1994); or truthfulness, *People v. Miller*, 890 P.2d 84, 91 (Colo.1995).

6. CRE 404(b) (stating in part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith"); *see also Douglas v. People*, 969 P.2d 1201, 1204 (Colo. 1998); *People v. Spoto*, 795 P.2d 1314, 1318 (Colo.1990); *Martin v. People*, 738 P.2d 789, 794 (Colo.1987); *Serratore v. People*, 178 Colo. 341, 344, 497 P.2d 1018, 1020 (1972) (stating as a general rule a defendant's criminal record is inadmissible); *Kostal v. People*, 144 Colo. 505, 512, 357 P.2d 70, 73 (1960). As an exception to this general prohibition, CRE 404(b) allows evidence of other crimes or bad acts for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*Law Dictionary* 396 (8th ed.2004). Under our rules of evidence, character evidence of a witness may be offered to discredit the believability or credibility of a witness's testimony. CRE 608(a). This exception to the general prohibition against the introduction of character evidence allows the impeachment of a witness's credibility, or truth-telling capabilities, by evidence of his "character for truthfulness or untruthfulness." *Id.* These rules allow the truthfulness of a defendant's testimony to be tested while barring the jury from engaging in the prohibited character inference that a witness acted in conformity with his bad character and therefore committed the underlying offense. *Id.; People v. Quintana,* 882 P.2d 1366, 1372 n. 10 (Colo.1994) (citing *People v. Spoto,* 795 P.2d at 1320–21).

█ The sole reason to limit the evidentiary use of a prior conviction to impeachment only is to prevent the jury from using this evidence to make prohibited character inferences. Without this distinction about the use of a prior conviction, the jury could infer the present guilt of a witness who is also the accused because he previously committed a bad act. In other words, "the jury might misuse the evidence and give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime charged, or even that he ought to be imprisoned without too much concern for present guilt or innocence." John Strong, *McCormick on Evidence,* § 42, at 168–69 (5th ed.1999). This is the situation presented by Harding.

The inherent prejudice of offering evidence of a prior conviction is recognized by the General Assembly in section 13–90–101, C.R.S. (2004), which states that evidence of a prior felony conviction may be offered for "affecting the credibility" of the witness. This statute exemplifies the distinction we recognize between the use of a prior conviction to show the defendant's propensity to act in a particular fashion and his ability to be truthful on the witness stand. *People v. Chavez,* 621 P.2d 1362, 1366 (Colo.1981). Despite the prejudicial nature that evidence of a prior felony conviction has on a witness's testimony, we permit it so the jury may use it for the limited purpose of making the inference that a witness who disobeyed a social norm in the past may be "violating another norm [by] lying now." Edward Imwinkelried, *Evidentiary Foundations* § 5.10[1] (5th ed.2002).

This distinction between character and credibility in the context of impeaching a defendant is borne out in our cases. For example, in *People v. Tippett,* 733 P.2d 1183, 1193 (Colo.1987), we held that a judge who presided over the defendant's divorce proceedings could testify to rebut the defendant's testimony at his criminal trial for the limited purpose of impeaching his credibility. In that case we recognized the difference between the permitted use of character evidence to discredit the truthfulness of a defendant and the prohibited use to prove the defendant committed the offense charged. We noted that an accused who testifies "does not thereby place his general character in issue, [but] does subject himself to an attack on his credibility" just like any other witness. *Id.* Likewise in *People v. Couch,* 179 Colo. 324, 329, 500 P.2d 967, 969 (1972), we identified a difference between the use of character evidence to prove the witness possessed a bad character and the use of it to test his credibility—that is, his "propensity to disregard the obligation of an oath." *Id.*

To summarize, a witness's credibility represents the believability or truthfulness of his testimony. His credibility may be impeached with evidence of his bad character which may impact whether the witness's testimony about a particular matter can be believed. Character, on the other hand, concerns the substantive proof that a witness will act in a particular way on a particular occasion. Without the proper limiting instruction, the introduction of evidence of a witness's prior bad acts permits the jury to make the inference that the person acted in a certain way according to that trait. Thus, the evidentiary concept of "character" and the trait of "credibility" are substantively different terms when used by the trial court to advise a defendant that a prior felony conviction could be used for the limited purpose of impeaching his prospective testimony pursuant to *Curtis.*

Hence, we hold that the trial court's advisement in this case was defective because it did not advise Harding that the jury could consider his prior felony conviction for the limited purpose of how it bears upon his ability to be truthful—that is, his "credibility." Moreover, the trial court's advisement was not merely deficient, but it incorrectly advised Harding about the consequences of testifying at his trial—that the jury could have considered his prior felony as it related to his propensity to re-offend and to treat his prior conviction for sexual assault as proof that he committed the charged crimes, and not just for assessing the truthfulness of his testimony. *See Blehm*, 983 P.2d at 788 (stating, "where the trial court's on-the-record advisement has been deficient in some important way, we have necessarily concluded that the defendant's waiver was invalid").

## B. The Post–Conviction Proceeding

■ Having determined that Harding's Curtis Advisement was deficient, we address the People's contention that without any evidence at the post-conviction hearing, the trial record and specifically the record of the advisement was sufficient to prove that Harding's waiver was voluntary, knowing and intelligent irrespective of the defective advisement.

The People assert that the trial record indicates that Harding spoke with his attorney about testifying and that the trial judge and Harding discussed his rights. In addition, they argue that an earlier argument and ruling by the trial court concerning whether a prior bad act allegedly committed by Harding was admissible to prove his identity support the post-conviction court's finding of waiver.

At the post-conviction hearing, the prosecution relied upon the record of the trial court's presumptively defective Curtis Advisement to argue that Harding validly

waived his right to testify. As support for waiver, the prosecution also referred to portions of the trial record to prove Harding knew the consequences of testifying but introduced no evidence that Harding did in fact understand his right to testify when he waived this right. The trial record indicates that Harding did talk to his attorney about whether to testify, but it is silent concerning what was said.[7] The trial record is also silent as to whether Harding understood the consequences of testifying after the court ruled that evidence of prior acts would be admissible to prove identity and not Harding's "bad character." The similar transaction ruling under CRE 404(b) by the trial court had nothing to do with Harding's personal decision of whether to testify after receiving his Curtis Advisement. Without more information concerning Harding's decision not to testify other than what the trial record reveals, we are unable to conclude that Harding knew and understood the evidentiary concept that his prior conviction for sexual assault could only be used to impeach his credibility if he testified.

Because the advisement misstated the fifth *Curtis* element, the post-conviction court must review the trial record and weigh any other evidence presented to determine whether a defendant, such as Harding, was made fully aware of the impeachment consequences of testifying. After reviewing the record of this case, we are unable to conclude that Harding knew these consequences, and knowing them, waived his right to testify. A contrary conclusion would require us to disregard the *Curtis* mandate which requires that Harding's advisement be treated as defective, as well as the *Blehm* mandate which requires the prosecution prove at a post-conviction hearing the validity of the defendant's waiver notwithstanding the invalid advisement. If we were to sanction the post-conviction finding of waiver here, we would

7. The defendant in *People v. Gray*, 920 P.2d 787, 791 (Colo.1996), had been advised by his attorney about testifying at trial and had acknowledged this to the court. Contrary to the People's position here, we do not read *Gray* to mean that Harding's advisement by his attorney provided sufficient evidence to establish a valid waiver. We were not required to determine the effect of

this consultation with Gray's attorney because we concluded that "[t]he trial court did not mislead [the] defendant." *Id.* at 792. In fact, the trial court's advisement included the essential *Curtis* elements and stated that the defendant's *"prior felonies would be admissible with respect to credibility."* *Id.* at 789 (emphasis in original).

be assuming that the defendant understood the impeachment consequences of testifying. This assumption constitutes speculation about what Harding actually knew when he waived his right to testify rather than what the record reveals. *See Blehm,* 983 P.2d at 787 (stating that the purpose of placing the waiver on the record is to "eliminate speculation"). Such an assumption appears reasonable in a case like this because ordinarily a defendant with a prior conviction for sexual assault would choose not to testify precisely because the jury would find out that he was a sex offender and be severely biased against him. However, the central purpose of the Curtis Advisement is for the trial court to ensure that this particular defendant, not someone similarly situated, in fact understands the choice he is facing and understands that the decision of whether to testify is his and his alone to make.

## Conclusion

For the reasons stated above, we affirm the court of appeals and remand this case to the court of appeals with directions to return it to the trial court for a new trial.

Justice KOURLIS dissents, and Justice RICE and Justice COATS join in the dissent.

Justice KOURLIS dissenting:

Because I believe that the advisement in this case satisfied the basic requirements of *People v. Curtis,* 681 P.2d 504 (Colo.1984), I respectfully dissent. In its current posture, this case presents the sole question of whether the trial judge's use of the word "character" in place of "credibility" in his advisement to the defendant concerning the right to testify entitles the defendant to a new trial. The majority reverses the defendant's third degree sexual assault conviction and third degree assault conviction and orders a new trial solely on the basis of that word substitution. Although I agree that *Curtis* established minimum standards for assuring a proper waiver of the defendant's right to testify, in my view, the majority opinion in this case overlooks the crucial point that *Curtis* and its progeny expressly avoided requiring a litany or formulaic advisement. Rather, those cases required only that the

advisement serve basic core purposes. Here, the trial court's advisement honored *Curtis*'s basic protections.

## I. BACKGROUND

The underlying case involved prosecution of Stephen P. Harding ("Harding") for third degree sexual assault by use of force, third degree assault, and commission of a crime of violence. The charges stemmed from allegations that on February 8, 1995, Harding entered a mall shoe store and sexually assaulted a female employee.

Following the People's case in chief, the trial court advised Harding of his right to testify ("Curtis Advisement"). In accordance with our precedent, the Curtis Advisement contained two crucial parts. The court first informed Harding of his right to testify, essentially inquiring whether he understood that the right was personal to him; to which, the defendant responded in the affirmative. Next, and relevant here, the court proceeded to inquire whether Harding understood the consequences of his decision to testify. The court asked whether Harding understood that should he opt to testify, the prosecution would be entitled to probe him concerning any felony conviction and that such evidence would be disclosed to the jury. In fact, Harding did have a prior conviction for sexual assault, which would have been made known to the jury should he have chosen to testify. Again, Harding answered "yes," that he understood that the conviction would be disclosed. When advising Harding about the purpose for which the jury would be permitted to consider his prior felony conviction, however, the court mistakenly asked Harding whether he understood that the jury would be instructed to consider the conviction "only as it bears on your character." Once again, Harding replied "yes." Harding elected not to testify. Following trial, the jury returned a judgment of conviction on all counts.

On direct appeal, a divided panel of the court of appeals rejected Harding's contention that the advisement was inadequate to assure that he voluntarily, knowingly, and intelligently waived his right to testify. *People v. Harding,* 983 P.2d 29 (Colo.App.1998)

(*"Harding I "*). Specifically, the panel noted that the advisement complied with the underlying policy of *Curtis*, by informing Harding that a consequence of testifying would be impeachment by the use of prior conviction. In his subsequent certiorari petition to this court, we remanded for further consideration because *Harding I* was decided before our decision in *People v. Blehm*, 983 P.2d 779 (Colo.1999). Ultimately, as directed by *Blehm*, the court of appeals remanded for the trial court to conduct an evidentiary hearing on the validity of Harding's waiver of his right to testify. *People v. Harding*, 17 P.3d 183, 185 (Colo.App.2000) (*"Harding II "*).

At the hearing (conducted by a judge other than the trial judge), the court heard argument from both parties based on the transcript of the trial advisement. Following that hearing, the trial court denied Harding's motion for post-conviction relief, finding that while the initial advisement's reference to "character" was erroneous, Harding's decision to withhold testimony was nonetheless "voluntarily, knowingly and intelligently" made. The court premised its decision on several factors, including: (1) that Harding discussed the issue of testifying with his attorney before the advisement; (2) that Harding had already made the decision not to testify based on defense counsel's discussion with the court about tendering a jury instruction to the effect that jurors could not draw a negative inference from Harding's failure to testify; and (3) that no evidence was introduced at trial regarding Harding's prior felony convictions and that Harding knew this was the legal result of his decision not to testify.

Harding again appealed to the court of appeals, which reversed in *People v. Harding*, No. 02CA0350, slip op., 2003 WL 22211273 (Colo.App. Sept.25, 2003) (not selected for official publication) (*"Harding III "*). In *Harding III*, a divided panel departed from the decision of the *Harding I* panel, finding that the advisement failed to "substantially comply" with *Curtis* and its progeny. Slip op. at 4, 2003 WL 22211273.

The court found persuasive the legal distinction between the terms "credibility" and "character," opining that the trial court's misstatement affirmatively misled Harding. Slip op. at 4–5, 2003 WL 22211273.

## II.  DISCUSSION

In *Curtis*, a consolidation of two cases, we declared that the defendant's right to testify is fundamental, and therefore entitled to certain procedural safeguards, including a determination from the trial court on the record as to whether the defendant "voluntarily, knowingly and intentionally" waived that right. 681 P.2d at 515. The trial court's task, as we explained it, involves an assessment outside the presence of the jury of whether the defendant understands the nature of his right to testify: specifically, that it exists and ultimately rests with him; that "if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury;" and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility. *Id.* at 514. Though we cautioned that the court must "indulge every reasonable presumption against waiver," *id.*, we made clear that "where the trial court, applying the correct standards, makes the findings necessary to establish effective waiver, and there is evidence to support these findings, they will not be disturbed on review." *Id.* at 515.

In the *Curtis* cases, the two trial judges had not advised the defendants of the right to testify. *Id.* at 508–09. In those cases, we reviewed other evidence to determine whether the defendant had been properly apprised of the right to testify. In the *Jones* case, we considered evidence that the defendant had been advised by trial counsel of the "advantages and disadvantages" of testifying sufficient to apprise the defendant of the consequences of his decision to testify.[1] *Id.* at 516.

Even though we have held that the advisement contemplated by *Curtis* is required, *see*

---

1. Specifically, the evidence concerning the consequences of the defendant's decision not to testify consisted of a statement by counsel that he had advised the defendant not to testify because

"if he took the stand his criminal record could be revealed to the jury, his alibi testimony would be uncorroborated, and he might lose his self-control while testifying." *Id.* at 509.

*People v. Milton,* 864 P.2d 1097, 1100 (Colo. 1994), our cases since *Curtis* have refrained from a rigid demand that trial courts engage in a litany advisement. We have repeatedly emphasized that *Curtis* did not prescribe a "litany or formula which must be followed in advising the defendant of his right to testify." *See id.; see also Blehm,* 983 P.2d at 793 (emphasizing that "we have not required the trial court to invoke the precise language used in *Curtis* or its progeny to describe each element"); *People v. Chavez,* 853 P.2d 1149, 1151 (Colo.1993) (same). To that end, we have rejected challenges to advisements in which the trial court stated that the jury would be instructed "with respect to credibility" or "with regard to credibility." *See People v. Gray,* 920 P.2d 787, 789 (Colo.1996), and *People v. Deskins,* 927 P.2d 368, 371 (Colo.1996). In fact, in *Gray,* we adopted that view despite complaints by the dissent that "an essential element of the advisement outlined in Curtis had been [excluded]" by its failure to state "that the defendant's testimony concerning prior felony convictions could be considered by the jury *only* with regard to credibility." 920 P.2d at 794 (Lohr, Kirshbaum and Mullarkey, JJ., dissenting) (emphasis in original).

Likewise, in *Roelker v. People,* 804 P.2d 1336, 1339 n. 4 (Colo.1991), although the trial court did not inform the defendant that his felony record could be considered for the limited purpose of impeaching his credibility, we viewed as effective a statement by the trial judge that should the defendant elect not to testify, "I will advise the jury that they cannot use your failure to testify as any evidence of guilt, and they should not consider it in any respect." Later, we determined that such evidence establishes the prosecution's prima facie case; consequently, the burden shifted to the defendant to demonstrate that "the trial judge, defense counsel, or anyone prevented him from testifying," or that "his desire to testify was thwarted." *See Tyler v. People,* 847 P.2d 140, 143 (Colo. 1993). In *Chavez,* we held the trial court's statement to the defendant that "If you do testify, the district attorney will be allowed to cross-examine you and will be able to ask you about your four prior felony convictions" inadequate. 853 P.2d at 1151. We noted

that the court had neglected to warn the defendant of the limited purposes for which his conviction would be admitted. *Id.* at 1152. We found the advisement "both deficient under *Curtis* and misleading in its content," primarily because the defendant had been charged both substantively for the charged crime and as a habitual criminal. *Id.* We found the advisement particularly egregious because the court's failure to advise the defendant of the limited purpose for which his conviction would be admitted "left the impression that the prior convictions could be used as substantive proof of the habitual criminal phase of the trial." *Id.* Such a result relieves the prosecution of the burden of proving the prior felonies at the habitual phase. *Id.* Thus, the crux of the issue is whether the trial court adequately informed the defendant that his conviction could not be used for purposes other than impeachment.

In fact, we have previously only reversed convictions based upon a truly deficient advisement that failed to advise the defendant of the consequences of his decision to testify. *See Blehm,* 983 P.2d at 786 (trial court informed defendant that prosecutor could inquire into his felony conviction but neglected to advise him of the limited purposes for which such evidence may be considered by the jury); *Milton,* 864 P.2d at 1100 (noting failure of the trial court to "mention the failure of testifying or not testifying as contemplated by *Curtis*"); *Chavez,* 853 P.2d at 1151 (noting that the trial court did not advise the defendant of the limited purpose for which his conviction would be considered); *Curtis,* 681 P.2d at 508–09 (noting that trial court did not advise the defendant at all and there was not evidence that trial counsel had in fact advised the defendant). In sum, we have not considered deviations from the language of the Curtis Advisement a sufficient basis to overturn an otherwise valid conviction.

Most significantly, the salient underpinning of *Roelker* and *Chavez* is that the "credibility" element of the Curtis Advisement is intended to prevent the jury from considering evidence of the defendant's prior conviction as substantive evidence of his guilt—that

the evidence must be considered solely for impeachment purposes. Thus, as long as the principle we sought to promote within that element of the advisement is met, the Curtis Advisement need not specifically refer to the word "credibility."

Hence, having decided that the Curtis Advisement need not be a litany, that deviations in words are acceptable, and that the advisement must only suffice to address the five major elements, we arrive at today's case. The majority concludes that the substitution of "character" for "credibility" so severely undermines the advisement as to negate one of the five elements. In support of that conclusion the majority looks to our rules of evidence and cases for the proposition that the terms "character" and "credibility" are so distinct as to render the two mutually exclusive. I respectfully disagree. In fact, CRE 608 suggests an interrelationship between "credibility" and "character" rather than an impervious wall. The rule states that one means of attacking the defendant's credibility is through evidence of his "character for truthfulness." CRE 608(a).

Indeed, our rule 608 is similar to the Federal Rule of Evidence 608, which indicates that "credibility" and "character for truthfulness" are interchangeable. As a matter of fact, for purposes of consistency, the federal rule has been amended to replace the term "credibility" with "character for truthfulness." *See* Fed.R.Evid. 608 (Advisory Committee Notes). When the issue involves impeaching the defendant's credibility, as the majority acknowledges, the rule only frowns on *evidence* of the person's character or trait introduced to prove he acted in conformity therewith. *See* CRE 404(a). Our cases follow the same logic in rejecting evidence that refers primarily to the defendant's "moral character." *See, e.g., People v. Couch,* 179 Colo. 324, 500 P.2d 967 (1972) (stating that impeachment should be directed at the defendant's credibility not his "moral character"); *McCune v. People,* 179 Colo. 262, 499 P.2d 1184 (Colo.1972) (rejecting impeachment amounting to "character assassination"). For purposes of this case, most importantly, while the rule rejects references to the defendant's general character as probative of

his tendency to act in a certain way, it most certainly permits evidence of the witness's "character" under section 13–90–101, C.R.S. (2004), that is, his felony conviction offered for impeachment purposes. *See* CRE 404(3). Overall, the rule does not create such a clear demarcation between "character" and "credibility," but rather treats "character" as a broader concept encompassing evidence of the defendant's "general character" and evidence of the defendant's "character for truthfulness," CRE 404, the latter of which being interchangeable with "credibility." Hence, character for truthfulness is a subset of character.

The record in this case does not suggest otherwise. The meaning of the advisement was that the jury would be instructed to regard the defendant's felony conviction solely for impeachment purposes. The advisement demonstrates that the reference to "character" was preceded by the trial court's statement that the prosecution could inquire into the defendant's felony conviction. Thus, the inference from the advisement is that the jury would be instructed to consider the defendant's felony conviction as it related to his character for truthfulness—not as some other evidence of his bad character.

Furthermore, we never intended that the *Curtis* test be viewed in a vacuum and one obvious fact leaps out of this record. First, the defendant had a prior sexual assault conviction, and was on trial for sexual assault. Rarely, if ever, would a defendant choose to testify under those circumstances. We engage in something of a legal fiction to surmise otherwise. Considering all the circumstances of this case, the trial court's advisement was sufficient.

The majority in fact agrees that under our cases, the shortfall by the trial court does not automatically render the advisement defective; they conclude, nevertheless, that the prosecution was required to, but failed to provide a basis independent of the trial record to establish waiver, as required by our decision in *People v. Blehm.* Maj. op. at 889–890.

To be sure, in *Blehm,* we did reinforce the Curtis Advisement, separating it into five distinct elements, including the fifth relating

to the limited purposes for which the defendant's conviction may be considered. 983 P.2d at 793. In *Blehm*, we modified the *Curtis* procedures in a number of ways. First, we required that the defendant's challenges be raised in a post-conviction proceeding, and second, we held that "off-the-record" evidence could be considered in determining the validity of the defendant's waiver. *Id.* at 791. We did not establish any specific list of factors to be considered by the post-conviction court, other than the *Curtis* Advisement elements themselves; and, as noted above, we made clear that despite our decision to reinforce those elements, we "have *not* required the trial court to invoke the precise language used in *Curtis.*" *Id.* at 793 (noting that as to the fifth element we only require that the advisement maintain the "*concept* that the conviction may be used to impeach his credibility") (emphasis added).

Here, the post-conviction court reviewed the record itself, which as I have suggested, was sufficient to uphold the advisement. The People were not required to present additional evidence if the record was adequate. This is not a case in which the trial court neglected to advise the defendant or omitted one or more elements of the Curtis Advisement, in which case inquiry would have to proceed outside the bounds of the record of the original case. Here, the record as a whole indicates that the discrepancy relating to the fifth element did not thwart the purpose underlying *Curtis*. Because of the interplay between "character" and "credibility" for impeachment purposes, the advisement addressed the "concept" that the jury would be instructed not to consider the evidence of the defendant's conviction as substantive evidence of his guilt.

The post-conviction court, moreover, complied with *Blehm* by holding a hearing in which it considered off-the-record evidence that the defendant had been advised by trial counsel, and even if the exact litany given the defendant was not known to the post-conviction court, there was clear evidence that the defendant had been present during the jury instruction conference in which the limiting instruction to be given the jury had been discussed. Accordingly, the record and evidence indicate that the trial court's use of incorrect syntax did not fundamentally undermine the protections we sought to enforce in *Curtis*.

## III. CONCLUSION

The Curtis Advisement is not an incantation; it is an inquiry and exchange. It is not *pro forma*; it serves the purpose of assuring that the defendant knows he may testify if he chooses, and what the consequences of exercising that choice will be. Today, in my view, the majority elevates form over substance by reversing a conviction based upon substitution of one word in an advisement which clearly did advise this defendant of his choice. Because our cases do not require this result, I respectfully dissent. I would therefore affirm the defendant's conviction and sentence.

I am authorized to state that JUSTICE RICE and JUSTICE COATS join in this dissent.