2014 CO 8

**Lessell Henry MOORE, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**Supreme Court Case No. 11SC157**

Supreme Court of Colorado.

February 3, 2014

**514**

Attorney for Petitioner: Samler & Whitson, P.C., Eric A. Samler, Denver, Colorado.

Attorneys for Respondent: John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado.

JUSTICE HOBBS delivered the Opinion of the Court.

¶ 1 In *People v. Moore*, No. 08CA1805, 2010 WL 5013681 (Colo.App. Dec. 9, 2010), we granted certiorari to determine whether the court of appeals erred in reviewing defendant's claim that his waiver of the right to testify was not knowing, voluntary, and intelligent, and whether contemporaneous objection in the trial court is required to preserve this issue.[1] *See People v. Curtis,* 681 P.2d 504 (Colo.1984), *as modified by People v. Blehm,* 983 P.2d 779 (Colo.1999); *see also People v. Harding,* 104 P.3d 881 (Colo.2005). Moore challenged his conviction on direct appeal before the court of appeals on multiple grounds, including that the trial court gave him a defective *Curtis* advisement and thus his waiver of the right to testify was not knowing and voluntary.

¶ 2 The court of appeals rejected Moore's challenge to the validity of his waiver of the right to testify and upheld his conviction, but ordered the trial court to vacate his first degree burglary assault/menacing conviction. In reviewing Moore's appeal, the court of appeals applied a plain error standard because Moore had not made a contemporaneous objection to the sufficiency of his *Curtis* advisement in the trial court. The court of appeals held that the trial court's advisement did not constitute plain error.

¶ 3 We hold that the court of appeals erred in considering Moore's challenge, on direct appeal, of his waiver of the right to testify. In reaching this holding, we modify our decisions in *Blehm* and *Harding.* We reaffirm that a defendant's challenge to his or her waiver of the right to testify is not subject to review on direct appeal, but only in a post-conviction proceeding. The defendant need not make a contemporaneous objection to the trial court's advisement. Moore may raise the issue of the validity of his waiver of the right to testify in a post-conviction proceeding, as we discuss in this opinion. Accordingly, we disapprove of and vacate the court of appeals' discussion and holding regarding the issue of the validity of Moore's waiver of the right to testify; otherwise, we uphold its judgment of conviction in this case.

**I.**

¶ 4 In October 2007, defendant Lessell Moore went to trial on a variety of charges stemming from an illegal entry into the residence of a woman who had a restraining order against him. Finding a different woman inside the residence, Moore ordered the woman into a back room and violently assaulted her. A jury convicted Moore of attempted first degree murder, two counts of first degree burglary, first degree assault, attempted sexual assault, menacing, and violation of a protection order. Moore had four prior felony convictions on his record, all the result of guilty pleas. As a habitual offender, he was sentenced to 224 years.

¶ 5 During the trial, the trial court administered a *Curtis* advisement apprising Moore of his right to testify. The court first explained that Moore had a right not to testify and, if he chose not to testify, the court would instruct the jury about this right. The court then advised Moore that he had a right to testify, that no one could prevent him from testifying, and that, if he did testify, the prosecution could cross-examine him regarding any relevant issues, as well as his prior felony convictions. It explained that, if the prosecution disclosed Moore's convictions to the jury, the court would instruct the jurors

---

1. We granted certiorari on the following issues:
 1. Whether the court of appeals erred under *People v. Blehm,* 983 P.2d 779 (Colo.1999), when it addressed defendant's *Curtis* advisement on direct appeal.

2. Whether the court of appeals erred in concluding that defendant's *Curtis* advisement was not plainly erroneous.

to consider them only as they bore upon his credibility. The court additionally stated that the prosecution "may ask [Moore] whether the convictions were by a guilty plea, or whether [he] actually went to trial, and [he was] found guilty by trial." At the conclusion of the colloquy, Moore said that he would follow his attorneys' advice and would not take the stand. The court found that Moore was alert and responsive, understood the advisement, and made a knowing and intelligent choice not to testify.

¶ 6 Moore appealed his conviction on several grounds, including that his conviction should be reversed based on an allegedly inadequate *Curtis* advisement that rendered his waiver of the right to testify not knowing and voluntary.[2] Moore argued to the court of appeals that his waiver of the right to testify was not knowing or intelligent because the trial court misstated the law when it advised him that the prosecution could ask whether his prior felony convictions resulted from trials or pleas. Moore based this argument on the 2008 Colorado Court of Appeals decision in *People v. Gomez*, 211 P.3d 53, 57 (Colo.App.2008)—decided after his own trial—which held a similar advisement to be incorrect as a matter of law. Moore argued that his waiver could not have been knowing or voluntary in the face of this defective advisement and that therefore his waiver was invalid.

¶ 7 The court of appeals acknowledged a split among divisions on limiting review of the validity of defendant's waiver to a post-conviction proceeding, as opposed to on direct appeal. The court of appeals then chose to address Moore's claim, observing that: (1) the prosecution had not challenged Moore's raising of the claim on direct appeal, instead arguing that "a remand is unnecessary because this Court can conclude from the exist-

ing record that the trial court's advisement . . . did not affect the defendant's decision to waive his right to testify"; (2) our decision in *Blehm*, which required such a claim to be raised via post-conviction motion, did not "cast the procedural issue as jurisdictional"; and (3) the court could resolve the issue without a fact-intensive inquiry.[3] It proceeded to apply a plain error standard of review and concluded that "even if the advisement was defective, the error was not plain." *Moore*, 2010 WL 5013681, at *1. The court of appeals reasoned that the law regarding this alleged error was unsettled at the time of trial, and "[w]hen the state of the law is unclear[,] . . . and only becomes clear as a result of later authority, the district court's error is perforce not plain." *Id.* at *3 (quoting *United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997)).

## II.

¶ 8 We hold that the court of appeals erred in considering Moore's challenge, on direct appeal, of his waiver of the right to testify. In reaching this holding, we modify our decisions in *Blehm* and *Harding*. We reaffirm that a defendant's challenge to his or her waiver of the right to testify is not subject to review on direct appeal, but only in a post-conviction proceeding. The defendant need not make a contemporaneous objection to the trial court's advisement. Moore may raise the issue of the validity of his waiver in a post-conviction proceeding, as we discuss in this opinion. Accordingly, we disapprove of and vacate the court of appeals' discussion and holding regarding the issue of the validity of Moore's waiver of the right to testify; otherwise, we uphold its judgment of conviction in this case.[4]

---

2. He succeeded only in his claim that his first degree burglary assault/menacing conviction should be vacated.

3. Judge Booras concurred in the judgment but noted that she would decline to address the validity of the *Curtis* advisement because doing so is contrary to the procedure outlined in *Blehm*.

4. In *People v. Ziglar*, 45 P.3d 1266, 1268 n. 4 (Colo.2002), we questioned the propriety of ad-

dressing a *Curtis* challenge on direct appeal in light of *Blehm*. We entertained the direct appeal there in light of our decision, as a matter of law, that there is no requirement for a trial court to give an amended *Curtis* advisement during the habitual phase of the trial. In the case before us, Moore alleged on direct appeal that his waiver of the right to testify was not knowing and voluntary, a matter for post-conviction proceedings.

## A. Waiver of Right to Testify

¶ 9 Our case law establishes that the intensely personal and fundamental nature of a defendant's right to testify imposes upon trial courts the "serious and weighty responsibility" of ascertaining whether the accused has intelligently and competently waived this right. *Curtis*, 681 P.2d at 514 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). As we noted in *Curtis*, "[a] waiver is an intentional relinquishment of a *known* right or privilege. The courts do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver." *Id.* (emphasis in original).

¶ 10 In *Curtis*, we recognized that the due process clauses of the United States and Colorado Constitutions afford criminal defendants the right to testify in their own defense. *Id.*; *see also* U.S. Const., amend. XIV, § 1; Colo. Const., art. II, § 25. We concluded that the right to testify is one so inherently personal and basic that it can only be surrendered by the accused's knowing, voluntary, and intelligent[5] waiver. *Curtis*, 681 P.2d at 511. Several considerations underlie the fundamental nature of this right, including the powerful evidentiary impact of a defendant's firsthand account of events, the importance of granting defendants a forum to "have their say" in court—notwithstanding any contrary advice from counsel—and the concomitant sense of legitimacy conferred on trial proceedings when defendants have the option to exercise this right. *See id.* at 513–14; *People v. Thomas*, 867 P.2d 880, 887 (Colo.1994). To this end, we identified five elements for a trial court advisement:

> [A] trial court exercising appropriate judicial concern for the constitutional right to testify should seek to assure that waiver is voluntary, knowing and intentional by advising the defendant outside the presence of the jury that *he has a right to testify, that if he wants to testify then no one can prevent him from doing so, that if he testifies the prosecution will be allowed to cross-examine him, that if he has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury, and that if the felony conviction is disclosed to the jury then the jury can be instructed to consider it only as it bears upon his credibility.* In connection with the privilege against self-incrimination, the defendant should also be advised that *he has a right not to testify and that if he does not testify then the jury can be instructed about that right.*

*Curtis*, 681 P.2d at 514 (emphasis added). We observed that the purposes of this advisement are to ensure that a defendant's waiver of this right is voluntary, knowing, and intelligent, to preclude post-conviction disputes between defendant and counsel on this issue, and to facilitate appellate review. *Id.* at 515. Giving such an advisement, we posited, would enable trial courts to "accurately determine whether [the] waiver was indeed intelligent and competent, and that determination will be readily reviewable on appeal." *Id.* at 516. Accordingly, we required trial courts to make a specific advisement about the right to testify and the consequences of waiver. The underlying premise of such an advisement is the importance of a defendant understanding the substance of the right.

¶ 11 In *Blehm*, we reaffirmed *Curtis's* central holdings that a defendant's waiver of the right to testify must be knowing, voluntary, and intelligent, and the trial court must make an on-the-record advisement explaining the nature of this right. *Blehm*, 983 P.2d at 782. We also restated the principle that, although the advisement need not conform to any prescribed litany or formulistic recitation, it should include the elements identified in *Curtis* and avoid misleading a defendant about the consequences of a decision not to testify. *Id.* at 787. In *Blehm*, we held that a defendant's opportunity to challenge whether his or her waiver of the right to testify was

---

5. In *People v. Mozee*, 723 P.2d 117, 121 n. 4 (Colo.1986), we noted that we had used the word "intentionally" in the *Curtis* opinion but did not mean to establish any particular distinction between the constitutional standard for waiver of a defendant's right to testify and waiver of other fundamental rights, which, in our jurisprudence, must generally be knowingly, voluntarily and *intelligently* made.

knowing, voluntary, and intelligent is through a post-conviction proceeding and not on direct appeal. *Id.* at 785.

¶ 12 Prior to *Blehm*, defendants were required to raise challenges to the validity of their waiver of the right to testify on direct appeal. The idea was that trial courts could "eliminate speculation as to what a particular defendant might believe to be the salient consequences of testifying...." *Id.* at 787 (quoting *People v. Milton*, 864 P.2d 1097, 1101 (Colo.1993)). Appellate courts could then assess the validity of the waiver based on their review of the record alone, obviating the need for a separate evidentiary hearing. *Id.* at 788. Thus, in cases where the trial court's on-the-record advisement was deficient, courts concluded that the defendant's waiver was invalid. *Id.*

¶ 13 In *Blehm*, however, we reevaluated the propriety of the approach we took in *Curtis*. We concluded that sound reasons existed for modifying the process of appellate review in order to accomplish the original aims of *Curtis*. Specifically, we concluded that the *Curtis* framework did not facilitate appellate review and eliminate post-conviction disputes as intended, because: (1) appellate courts frequently permitted defendants to assert claims of invalid waiver in post-conviction proceedings, regardless of whether the defendant raised the issue on direct appeal; and (2) appellate courts were reluctant to automatically render a defendant's waiver invalid based solely on a defective advisement, where it seemed likely that the defendant had knowingly, voluntarily, and intelligently waived the right to testify. *Id.* at 790–91. We concluded that the review process outlined in *Curtis* failed to account for situations in which facts outside the record were critical to determining whether the defendant had knowingly, voluntarily, and intelligently waived this right. Accordingly, we held that defendants' claims of invalid waiver were "best addressed in post-conviction proceedings where an evidentiary hearing is available if necessary to ascertain facts not present in the original trial record." *Id.* at 792.

¶ 14 Thus, under *Blehm*, "defendants need not and should not raise allega-tions of an invalid waiver on direct appeal of a conviction. Instead, such claims may be raised *only* in a post-conviction motion." *Id.* (emphasis added). We explained that the inquiry in such a post-conviction proceeding centers on a defendant's assertion that his or her waiver was not effective because it was not knowing, voluntary, and intelligent.

> Consistent with the fundamental right explained in *Curtis*, the post-conviction inquiry should focus upon whether the defendant was aware that he had a right to testify, whether the defendant knew of the consequences of testifying, and whether the defendant understood that he could testify notwithstanding the contrary advice of counsel.... If, after the post-conviction hearing, the trial court concludes that the defendant's waiver was not voluntary, knowing and intelligent, the defendant is entitled to a new trial.

*Id.* We now turn to the court of appeals' erroneous decision to consider Moore's direct appeal challenge to his waiver of the right to testify in this case.

### B. Contemporaneous Objection Not Required and Waiver Issue Not Reviewable on Direct Appeal

¶ 15 Despite *Blehm*'s direction that defendants should raise waiver challenges only in post-conviction proceedings, panels of the court of appeals have since diverged on the issue of whether to address these claims on direct appeal. *Compare People v. O'Hara*, 240 P.3d 283, 291 (Colo.App.2010) *aff'd on other grounds*, 271 P.3d 503 (2012) (holding that *Blehm* foreclosed an inquiry into the sufficiency of defendant's *Curtis* advisement on direct appeal), *and People v. Gibson*, 203 P.3d 571, 574 (Colo.App.2008) ("This is a direct appeal, not a post-conviction proceeding. Therefore, under *Blehm*, we shall not address this claim."), *with Moore*, 2010 WL 5013681, at *1, *and Gomez*, 211 P.3d at 55. Court of appeals panels choosing to address challenges to the validity of a waiver on direct appeal have relied primarily on principles of judicial economy in support of review. *See Moore*, 2010 WL 5013681, at *1 (citing the Attorney General's argument that the court could "conclude from the existing rec-

ord that the trial court's advisement [ ] did not affect the defendant's decision to waive his right to testify" as a basis for addressing the issue); *Gomez,* 211 P.3d at 55 ("We first consider the ... argument that we should not address *Curtis* because 'defendants need not and should not raise allegations of an invalid waiver on direct appeal of a conviction. Instead, such claims may be raised only in a post-conviction motion.' ... We reject this argument based on judicial economy."); *see also People v. Ziglar,* 45 P.3d 1266, 1268 n. 4 (Colo.2002) ("Under *Blehm,* the proper forum for attacking a *Curtis* advisement is a post-conviction hearing, not direct appeal.... Hence, the propriety of addressing this issue on direct appeal is questionable. However, in light of our decision that the second *Curtis* advisement was unnecessary, we choose to address the issues raised.").

¶ 16 We perceive no sound justification for deviating from *Blehm*'s holding that a defendant's challenge to the knowing, voluntary, and intelligent waiver of the right to testify may be raised only through a post-conviction proceeding. *See Bedor v. Johnson,* 292 P.3d 924, 929 (Colo.2013) ("The principles of stare decisis provide that this Court will follow the rule of law it has established in earlier cases.... We will depart from our precedent, however, 'where sound reasons exist for doing so.' " (citing *Blehm,* 983 P.2d at 788)).

■■■■ ¶ 17 The issue on post-conviction review, whether the defendant's waiver of the right to testify was knowing, voluntary, and intelligent, is a question of law subject to de novo review. *See Harding,* 104 P.3d at 885; *Blehm,* 983 P.2d at 792 n. 9. While appellate courts are ordinarily well-positioned to review legal issues on direct appeal, a defendant's challenge to the knowing, voluntary, and intelligent waiver of the right to testify likely will require a post-conviction court to look beyond the trial court's advisement into facts that the defendant brings forward that are not contained in the direct appeal record. Post-conviction review focuses not only on the sufficiency of the advisement itself, but also on the actual knowing, voluntary, and intelligent nature of a defendant's waiver. *See Blehm,* 983 P.2d at 791–

92. Requiring defendants to assert such claims via Crim. P. 35(c) "avoids piecemeal litigation by requiring ... defendant[s] [to] raise all relevant issues in one postconviction proceeding." *People v. Montoya,* 251 P.3d 35, 45 (Colo.App.2010).

¶ 18 In prior cases, we have not required a defendant to contemporaneously object to the *Curtis* advisement. *See Harding,* 104 P.3d at 883 n. 1 (no contemporaneous objection during colloquy); *see also Blehm,* 983 P.2d at 783, 785 (no contemporaneous objection during advisement to defendant Blehm; no contemporaneous objection during colloquy with defendant Saint–Veltri). Indeed, application of the contemporaneous objection and plain error review standards based on the defendant's failure to object during his own advisement make little sense. The very premise of such an advisement is that a defendant may not understand the nature of the right or the consequences of waiving it. Hence, it is illogical to oblige a defendant to object contemporaneously to the trial court's advisement.

■■■■ ¶ 19 Trial courts should continue to give the five elements of the *Curtis* advisement, the purpose of which is to safeguard the knowing, voluntary, and intelligent nature of defendant's understanding of the right to testify in deciding whether or not to testify. Nevertheless, the precise wording the trial court utilizes does not govern whether or not the defendant's waiver is in fact knowing, voluntary, and intelligent, and direct appeal plain error review posited on contemporaneous objection to the advisement is inapplicable. As we noted in *People v. Mozee,* 723 P.2d 117, 124–25 (Colo.1986), "[u]nderlying our concern in *Curtis* was the belief ... that a defense attorney, acting in a good faith and with a zeal to prevent the client's conviction, might overbear a defendant's desire to testify." *Id.* at 125. Given that it is the defendant's right alone to testify or to waive the right to testify, we do not penalize the defendant for failing to object to the adequacy of the *Curtis* advisement.

### C. Post–Conviction Process for Challenging the Defendant's Waiver

¶ 20 We now turn to the post-conviction process for determining whether a defendant

challenging the validity of his waiver of the right to testify is entitled to relief. In doing so, we modify our decisions in *Blehm* and *Harding*.

¶ 21 In *Blehm* we described two types of advisements, those that were "adequate" and those that were "inadequate." An adequate advisement is given when the trial court informs the defendant of each of the five elements we identified in *Curtis*. *See Blehm*, 983 P.2d at 793. An inadequate advisement is one where the defendant is not informed of those five elements. *Id.* at 794. In *Blehm*, we said that a defendant who is advised of the five elements is not entitled to either an evidentiary hearing or a new trial. *Id.* In contrast, we said that a defendant who is not advised of the five elements is entitled to a post-conviction hearing to determine whether his waiver of the right to testify was in fact knowing, voluntary, and intelligent, and, if the district court concludes that the defendant's waiver was not valid, the defendant is entitled to a new trial. *Id.*

 ¶ 22 We now determine that, in either scenario—whether the advisement contained the five elements or did not contain the five elements—the essential task before the trial court on post-conviction review is to determine whether defendant's waiver of the fundamental constitutional right to testify was knowing, voluntary, and intelligent. We depart from *Blehm*'s focus on the adequacy of the advisement. The adequacy of the advisement is not dispositive of whether a defendant is entitled to an evidentiary hearing. The post-conviction proceeding commences with defendant's challenge to the validity of the waiver of the right to testify as it appears in the record of the proceeding.[6]

¶ 23 Pursuant to Crim. P. 35(c)(3)(IV), if the defendant fails to state adequate factual or legal grounds for relief, the trial judge may deny the motion. If the defendant does, however, meet this burden, the trial judge must direct the prosecution to respond and may then either enter judgment on the pleadings or hold an evidentiary hearing. Crim. P. 35(c)(3)(V). As the party challenging under Crim. P. 35(c) the validity of the waiver that appears in the trial court record, the defendant, in order to obtain an evidentiary hearing, must allege specific facts that if proved at the hearing establish a prima facie case that the waiver of the right to testify was not knowing, voluntary, and intelligent. *See People v. Simpson*, 69 P.3d 79, 81 (Colo.2003) ("To warrant a hearing, a defendant need only assert facts that, if true, would provide a basis for relief.") (citing *White v. Denver Dist. Court*, 766 P.2d 632, 636 (Colo.1988); *People v. Trujillo*, 190 Colo. 497, 549 P.2d 1312 (1976) (no evidentiary hearing required where defendant's motion for post-conviction relief only presented question of law); *Allen v. People*, 157 Colo. 582, 404 P.2d 266 (1965) (evidentiary hearing was not required where the defendant did not introduce any new facts but merely argued that the trial court erred in failing to investigate and ascertain that defendant was indigent)). Then, because the fundamental right to testify is at issue, the prosecution bears the burden of demonstrating that defendant's waiver was knowing, voluntary, and intelligent. *Harding*, 104 P.3d at 885.

¶ 24 We emphasize that the content of a trial court's advisement, standing alone, does not conclusively establish whether a defendant's waiver of the right to testify was or was not knowing, voluntary, and intelligent. Post-conviction courts should not tether their determination of whether a defendant validly waived the right to testify to any precise formula or particular behavior. Rather, they are tasked with pursuing the more general inquiry of whether the defendant waived this right knowingly, voluntarily, and intelligently. "[C]ourts should not presume acquiescence in the loss of the right to testify, and therefore should indulge every reasonable presumption against waiver.... The fundamental fairness of a criminal trial is called into question if this right is relinquished in any other way." *Blehm*, 983 P.2d at 786 (citing *Curtis*, 681 P.2d at 511, 514).

 ¶ 25 As we also recognized in *Blehm*, the Crim. P. 35 post-conviction inquiry should focus upon whether the defendant was

---

6. If there is no record of defendant having waived the fundamental right to testify, the court of appeals on direct review may reverse the conviction and order a new trial.

aware that he or she had a right to testify, whether the defendant knew of the consequences of testifying, and whether the defendant understood that he or she could testify notwithstanding the contrary advice of counsel. 983 P.2d at 792. We observed that the primary reason to reserve a waiver challenge for post-conviction review is that off-the-record evidence may be required so that the trial court can find facts and make a determination whether or not to grant a new trial. *Id.* at 791–792.

¶ 26 The prosecution cannot ordinarily put the defendant or defendant's counsel on the stand in trial court proceedings. However, a defendant's assertion that his or her waiver of the right to testify is not valid often puts into controversy what the defendant did or did not understand in waiving the right; what the attorney did or did not say; and any other pertinent circumstances relating to defendant's condition at the time of the waiver, for example, whether defendant was impaired, intoxicated, suffering a language barrier, or coerced to a degree that renders the waiver not knowing, voluntary, and intelligent. As the moving party on the issue of the validity of the waiver, the defendant's factual allegations will trigger whether or not the trial court convenes an evidentiary hearing on those allegations. If a defendant does not make and prove factual allegations warranting a judgment on the pleadings or an evidentiary hearing in the post-conviction proceeding, the trial court's advisement at trial containing the five *Curtis* elements prevails and the waiver is deemed valid. This is because the advisement is evidence reflecting that the waiver was knowing, voluntary, and intelligent, which, if not contested by evidence showing otherwise, stands in support of the validity of the waiver.

¶ 27 Thus, in *Blehm*, we enunciated a presumption that defendant's waiver is knowing, voluntary, and intelligent when the trial court's on-the-record advisement includes the five *Curtis* elements:

Where the trial court's on-the-record advisement includes the five essential *Curtis* elements, the record conclusively demonstrates that the defendant made a valid waiver of the right to testify. Thus, if the trial court determines that the advisement was adequate, the defendant is not entitled to an evidentiary hearing on the issue of the validity of the waiver.

*Blehm*, 983 P.2d at 792. Contrary to our use of the word "conclusively" in this context, we now determine that a defendant is not precluded from introducing off-the-record evidence in a post-conviction proceeding to demonstrate the invalidity of his waiver of the right to testify. As we observed earlier in this opinion, a successful challenge to the validity of a waiver of the right to testify that appears in the record of the trial court proceeding will likely involve off-the-record evidence demonstrating that the waiver was not knowing, voluntary, and intelligent.

¶ 28 Similarly, even where a defendant does not receive an adequate advisement, a defendant still must make factual allegations which, if proved, would warrant an evidentiary hearing in the post-conviction proceeding. Thus, contrary to *Blehm*, 983 P.2d at 794, an inadequate advisement does not automatically entitle a defendant to a post-conviction hearing. As discussed earlier in this opinion, the defendant who is challenging the validity of the waiver has the burden under Crim. P. 35(c) to first come forward with evidence demonstrating that the waiver was not knowing, voluntary, and intelligent. If the defendant does so, the prosecution then must show that the waiver was knowing, voluntary, and intelligent. To the extent that *Harding* put the initial burden on the prosecution, we overrule that aspect of *Harding*. *See* 104 P.3d at 885.[7]

### D. Application to this Case

¶ 29 Moore was not required to make a contemporaneous objection to the trial court's *Curtis* advisement, and plain error review is inapplicable. The court of appeals

---

7. Our discussion of the burden of proof today pertains only to the waiver of the fundamental right to testify in one's own defense, the waiver of the right to counsel, and the waiver of the right to a jury trial. It does not alter the burden of proof in post-conviction proceedings generally.

should not have reviewed Moore's claim that the *Curtis* advisement in his case rendered his waiver of the right to testify not knowing and voluntary. Moore may raise this issue in a post-conviction proceeding.

### III.

¶ 30 Accordingly, we disapprove of and vacate the court of appeals' discussion and holding in regard to Moore's challenge to the validity of his waiver of the right to testify; otherwise, we uphold the court of appeals' judgment of conviction in this case.

JUSTICE COATS concurs in part and dissents in part, and JUSTICE EID joins in the concurrence in part and the dissent in part.

JUSTICE COATS, concurring in part and dissenting in part.

### I.

¶ 31 Today the majority takes another step in what I consider to be an entirely appropriate (if overly cautious and piecemeal) retreat from our earlier experiment in *People v. Curtis,* 681 P.2d 504 (Colo.1984). Most notably, the majority clarifies that our initial departure from the dispositive-advisement approach of *Curtis, see People v. Blehm,* 983 P.2d 779 (Colo.1999), actually represented a broad policy shift away from mandating compliance with a set of prophylactic warnings, in favor of a return to an examination of the constitutional effectiveness of a defendant's waiver itself. As the majority quite properly recognizes, one consequence of this return to a purely constitutional analysis was to acknowledge that even a complete and accurate *Curtis* advisement cannot conclusively establish either the volitional or cognitive dimensions of an effective waiver, notwithstanding our prior suggestion to the contrary; and whether complete and accurate or not, that a defendant who personally makes a record waiver of his right to testify bears the burden of coming forward with evidence that his waiver was nevertheless ineffective.

¶ 32 While I therefore consider the action taken by the court today to be of substantial import in further clarifying the requirements of a valid waiver, I nevertheless believe the majority's failure to fully come to grips with the problem of constitutional waiver, as a general matter, and the relationship between the waiver of a defendant's right to testify and the waiver of his right to counsel, in particular, leads it to take several conceptual missteps, which I fear will perpetuate misperceptions about the purpose behind continuing to prescribe *Curtis* warnings as well as the effect of failing to fully comply. In particular, I am concerned about the significance the majority impliedly attaches to the *Curtis* warnings (while reaffirming in the same breath that their inadequacy will no longer be considered dispositive). I find especially problematic the majority's suggestion that the five warnings enumerated in *Curtis* advisements actually define an intelligent waiver and that in addition to rebutting any volitional challenge advanced by a defendant, the prosecution bears the ultimate burden of proving his understanding of the substance of these five warnings. Rather than understanding our admonition to continue administering *Curtis* warnings as merely directory and evidentiary in nature (which I believe to be the case), the majority at times appears to require proof that a defendant understood these five elements before waiving his right to testify, either from the record of a complete *Curtis* advisement or by the prosecution's production of additional evidence at a separate post-conviction hearing.

¶ 33 With regard to the actual question presented on certiorari, I object to the majority's artificial and mechanical limitation of waiver challenges by a defendant to any particular procedural vehicle, and especially one that must either follow or be pursued in lieu of the defendant's direct appeal. Although the majority acknowledges, *by footnote,* that the absence of any record of a personal waiver whatsoever "may" result in reversal on direct appeal, *see* maj. op. ¶ 22 n. 6, it purports to permit a challenge to the *constitutional effectiveness* of a record waiver only in post-conviction proceedings pursuant to Crim. P. 35(c). Depending upon the timing and specific nature of a defendant's challenge, various other procedures for developing a necessary record may be equally ade-

quate and therefore should not be arbitrarily excluded. (In *Curtis* itself we noted that the defendant had already made an additional evidentiary record by way of a motion for new trial.) I would find it more appropriate, and less artificially and needlessly restrictive, to simply clarify the circumstances in which a defendant's challenge will necessarily be futile without some additional record.

¶ 34 Because the record on appeal clearly reflected an advisement of the personal right to testify and an express waiver of that right, without any indication that the defendant was coerced or was nevertheless unaware of his right, I would also affirm the judgment of the court of appeals. Whether a subsequent post-conviction challenge to the effectiveness of the waiver should be barred as already fully and finally litigated I consider to be a matter more appropriately determined if and when such a challenge is advanced. I therefore concur in part and dissent in part, and write separately to briefly explain my reasoning.

## II.

¶ 35 In 1984, this court anticipated the Supreme Court's opinion in *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), and found the right to testify to be a constitutional right personal to the defendant. *See Curtis*, 681 P.2d at 511–12. Analogizing a waiver of this right to a waiver of the right to counsel, we concluded that a waiver of the former must also be voluntary, knowing, and intentional, and that the existence of an effective waiver of this right should also be ascertained by the trial court, on the record. *Id.* at 514–15. We further indicated that the trial court could discharge this duty either by advising the defendant of his personal right and specified consequences of exercising that right or by permitting defense counsel to question his client on the record in the presence of the judge. *Id.*

¶ 36 By mandating reversal for failing to include this specific set of advisements, the *Curtis* progeny unquestionably went beyond anything required by the United States Supreme Court, or even this court, with regard to the waiver of a defendant's right to counsel. In the year following *Curtis*, we made

this crystal clear by finding the record waiver required by *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1974), satisfied by no more than notification of the right itself, along with a caution that there could be disadvantages to proceeding pro se. *See People v. Romero*, 694 P.2d 1256 (Colo.1985); *see also Romero*, 694 P.2d at 1270–73 (Dubofsky, J., concurring in part and dissenting in part) (agreeing that this limited record evidenced the constitutionally required voluntary, knowing, and intentional waiver but also emphasizing that the better practice would have been to more fully advise the defendant of the particular and numerous difficulties he would likely face without counsel). Within the next few years, in holding that a voluntary waiver of the right to counsel could be inferred from the totality of the circumstances, even in the face of a record demand for counsel, we emphasized the value of a colloquy guided by the Colorado Trial Judges' Benchbook but once again expressly held that the failure to give such warnings would not be dispositive of the constitutional validity of a waiver. *See People v. Arguello*, 772 P.2d 87 (Colo.1989) (including as an appendix the benchbook's suggested advisements to a defendant seeking to proceed pro se). With regard to waiver of a defendant's right to counsel, this jurisdiction has consistently remained in line with the majority of other jurisdictions interpreting the requirement of *Johnson* and *Faretta* that an intentional waiver of a known right appear on the record.

¶ 37 In addition to our clarification of the more limited nature of the trial record actually required to support a waiver of the right to counsel, it is also the case that the United States Supreme Court has never required that the waiver of other constitutional rights personal to a defendant similarly appear of record. Although, for example, *Faretta* clearly established that a defendant has an equal and opposite personal right to proceed pro se, no jurisdiction in the country interprets *Johnson* or *Faretta* to mandate a similar advisement and record waiver of that right before permitting a defendant to pro-

ceed *with* counsel. By the same token, although a defendant has a personal privilege against self-incrimination, the Supreme Court has never required a record waiver of that privilege before a defendant may be permitted to testify; and we have required an advisement of the privilege only as a precondition to waiving the right to testify, not the right to abstain from testifying.

¶ 38 With regard to the right to testify in particular, the vast majority of jurisdictions in this country require no record waiver whatsoever, holding instead that in the absence of evidence to the contrary, a defendant's decision not to exercise his right, by actually testifying at trial, is alone sufficient to presume an effective waiver of that right. *See generally* Michele C. Kaminski, Annotation, *Requirement that Court Advise Accused of, and Make Inquiry with Respect to, Waiver of Right to Testify*, 72 A.L.R.5th 403 (1999). While we have never retreated from the analogy drawn in *Curtis* between the rights to testify and to the assistance of counsel—the analogy from which we derived our requirement that an intentional waiver of a known personal right to testify appear on the record—unless or until the Supreme Court indicates otherwise, I no more than the majority would advocate such a retreat. It must nevertheless be made clear that a record of the precise elements of the *Curtis* litany has never been necessary for a constitutionally effective waiver; and similarly, that the precise litany itself, useful as it may be in helping to ensure an informed choice and forestall after-the-fact claims of ignorance, does not represent a body of knowledge constitutionally required for an intelligent waiver of the right to testify.

¶ 39 The extent to which a constitutional waiver does or does not require some appreciation for the tactical significance of forgoing a particular right, beyond a simple awareness of the right itself, has long been a matter of debate. *See, e.g., Iowa v. Tovar,* 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (rejecting notion that trial court was required, before accepting defendant's waiver of counsel at plea hearing, to give a detailed admonishment of the usefulness of an attorney and particularly the risk that a possible defense

might be overlooked without one, apparently rejecting without comment the plurality opinion in *Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948)); *see also Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (finding an effective waiver of *Miranda* rights as long as defendant understood he had the right to remain silent and his statements could be used against him, regardless of any lack of warning or appreciation by the defendant for the seriousness of the crimes being investigated). While the breadth of a defendant's required appreciation of the possible consequences of a waiver may vary with the right being waived, as the Supreme Court's treatment of guilty pleas and waiver of counsel seems to demonstrate, apart from notifying the defendant of a personal right to testify or forgo testifying, at his choice, and the general admonition that by testifying he necessarily submits himself to cross-examination, the warnings enumerated in *Curtis* merely concern nuances of state law governing impeachment with prior felony convictions. Whatever may be the merits of identifying these particular consequences of exercising the right, to the exclusion of other similarly adverse consequences, they are neither necessary for an intelligent waiver of the right, as a matter of Supreme Court jurisprudence, nor sufficient to fully advise a defendant of the possible disadvantages of rejecting his counsel's advice and taking the stand.

¶ 40 By holding that a personal waiver of record can be successfully challenged, if at all, only by producing evidence, in a collateral attack, to the effect that the waiver was nevertheless involuntary or made without sufficient understanding, the majority necessarily accepts the fact that such a record waiver is sufficient to presume an effective waiver. By placing the burden of proof on the prosecution in a subsequent collateral attack on the effectiveness of the waiver, contrary to the universally accepted view concerning the burden of proof in collateral attacks, *see, e.g., Johnson,* 304 U.S. at 468, 58 S.Ct. 1019 (in collateral attack, "presumption of regularity" requires defendant to bear burden of convincing court that waiver of his right to counsel was not made competently and intelligently); *Lamb v. People,* 174 Colo.

441, 484 P.2d 798 (1971) (in motion for post-conviction relief pursuant to Crim. P. 35, legality and regularity are presumed placing burden on defendant by at least preponderance of the evidence), the majority, however, fails to appreciate that it is the defendant who must overcome the presumption of effectiveness, not the People. Perhaps even more disconcertingly, the majority's suggestion that only an "advisement at trial containing the five *Curtis* elements," maj. op. ¶ 26, creates the presumption of an effective waiver is not only altogether inconsistent with our retreat from *Curtis* but also erroneously implies that a failure of the prosecution to prove that the defendant's record waiver was made both voluntarily and with an awareness of these five elements effectively mandates a finding that his waiver was ineffective.

¶ 41 Limiting to the evidentiary hearing provided by Crim. P. 35(c) any opportunity for a defendant to make his required record I consider to be a senseless restriction, but one that will at worst have the adverse effect of delaying the proof of meritorious claims. By contrast, the majority's placement of the ultimate burden of proof on the prosecution and its continued emphasis on "the trial court's advisement at trial containing the five *Curtis* elements," maj. op. ¶ 26, I consider to reflect serious conceptual failings, with the likely effect of further confusing both courts and litigants about the reason for requiring an additional evidentiary record.

### III.

¶ 42 Because I believe the majority at least takes one more step toward healing a self-inflicted but long-festering wound and upholds the court of appeals affirmance of the defendant's convictions, I concur in those portions of its opinion and judgment.

¶ 43 I am authorized to state that JUSTICE EID joins in the concurrence in part and dissent in part.