23CA0609 Peo v Smith 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0609
City and County of Denver District Court No. 07CR4062
Honorable Jay S. Grant, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Charles Alston Smith,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Johnson and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Lucy H. Deakins, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Charles Alston Smith, appeals the postconviction court's order denying his Crim. P. 35(c) motion.  We affirm.

## I.    Background

¶ 2    In July 2007, after waving his arms and yelling "I want my money or I will kill you," Smith stabbed a crosswalk pedestrian with a screwdriver, causing serious bodily injury.  He was arrested and charged with first degree assault and attempted first degree murder.  Criminal proceedings were delayed for years while the Colorado Mental Health Institute at Pueblo (CMHIP) sought to restore Smith's competency to assist in his own defense.  In October 2011, a CMHIP staff psychologist opined that Smith was competent to proceed.

¶ 3    In November 2011, Smith's trial counsel, James Brennan, notified the district court and prosecution that Smith waived his right to a jury trial.  The next month, the court held a short hearing where it asked Smith (1) if he would like to give up his right to a jury trial and have a judge hear the trial in his case, (2) whether he was thinking clearly, and (3) if this was his own decision.  Smith answered "yes" to each question, and the court found that he had made a knowing, intelligent, and voluntary waiver.

¶ 4    Smith's bench trial occurred in 2012.  The trial court — a different judge than the one who presided over Smith's jury trial waiver — acquitted him of attempted murder but found him guilty of first degree assault.  It sentenced him to twenty-two years in the custody of the Department of Corrections and granted approximately five years of presentence confinement credit.

¶ 5    Smith attempted to challenge the validity of his jury trial waiver on direct appeal, but because such claims must be raised in a postconviction proceeding, a division of this court affirmed Smith's conviction without addressing the constitutionality of his waiver.  *People v. Smith*, slip op. at 8 (Colo. App. No. 12CA1742, Aug. 14, 2014) (not published pursuant to C.A.R. 35(f)); *see People v. Walker*, 2014 CO 6, ¶ 13.

## II.    Postconviction Proceedings

¶ 6    With the assistance of postconviction counsel, Smith filed a timely Crim. P. 35(c) motion contending that his jury trial waiver was not knowing and intelligent.  He argued that the district court had not properly established, under Crim. P. 23(a)(5)(II)(b), that he understood (1) a jury waiver would apply to all issues that might otherwise need to be determined by a jury; (2) a jury would be

2

composed of a certain number of people; (3) a jury verdict must be unanimous; (4) in a bench trial, the judge alone would decide a verdict; and (5) the choice was his alone and could be made contrary to trial counsel's advice. Smith suggested that the court had a heightened duty to ensure that his waiver was knowing and intelligent because it was aware of his mental illness and his variable level of competence. And he attached a 2016 evaluation by psychiatrist Karen Fukutaki, opining that Smith had not been competent at the time he waived his right to a jury trial.

¶ 7    The first postconviction court denied the motion without a hearing, finding that the record demonstrated that Smith's waiver of a jury trial was knowing and intelligent. A division of this court disagreed, concluding that Smith had alleged facts that, if true, would entitle him to postconviction relief. *See People v. Smith*, slip op. at ¶ 19 (Colo. App. No. 17CA0564, Dec. 6, 2018) (not published pursuant to C.A.R. 35(e)). The division reversed the postconviction court's order and remanded for an evidentiary hearing. *Id.* at ¶¶ 21-22.

¶ 8    At a 2019 evidentiary hearing, a new postconviction court heard testimony from Dr. Fukutaki, Smith, and Mr. Brennan. Dr.

3

Fukutaki's 2016 evaluation was the only exhibit submitted. The court made some factual findings at the hearing and issued a written order ruling that Smith had the burden to prove his waiver was invalid, and that he had not met his burden. It denied Smith's motion for the second time.

¶ 9    On appeal, a division of this court once again reversed the postconviction court's order and remanded the case for further proceedings. *See People v. Smith*, (Colo. App. No. 19CA1834, July 7, 2022) (not published pursuant to C.A.R. 35(e)) (*Smith III*). The division first clarified that the relevant issue was whether Smith had knowingly and intelligently waived his right to a jury trial. *Id.* at ¶ 20. It then concluded that the postconviction court had improperly allocated the burden of proof — once Smith established a prima facie case that his waiver was invalid, which the division concluded he did, the burden shifted to the prosecution to show that his waiver was knowing and intelligent. *Id.* at ¶¶ 26-27; *see Moore v. People*, 2014 CO 8, ¶¶ 23, 28 & n.7.

¶ 10    On the second remand, the postconviction court held a short hearing where it heard arguments from the People and Smith's postconviction counsel. The court found that the prosecution had

4

proved by a preponderance of the evidence that Smith's waiver was voluntary, knowing, and intelligent. It denied Smith's motion for a third time in a written order.

¶ 11 Smith generally contends that the postconviction court made erroneous factual findings and that the court's findings do not support the legal conclusion that Smith knowingly and intelligently[1] waived his right to a jury trial. We disagree.

### III. Standard of Review and Applicable Law

¶ 12 We review a postconviction court's ruling on a Crim. P. 35(c) motion following an evidentiary hearing as a mixed question of fact and law. *Dunlap v. People*, 173 P.3d 1054, 1063 (Colo. 2007). When the court rules on the validity of a defendant's waiver of a constitutional right, its factual findings are reviewed for clear error, while its ultimate legal conclusion regarding the validity of the waiver is reviewed de novo. *See People v. Blehm*, 983 P.2d 779, 792 n.9 (Colo. 1999).

¶ 13 Under the clear error standard, we defer to the postconviction court's factual findings unless they are unsupported by the record.

---

[1] Smith does not challenge the district court's finding that his waiver was voluntary.

*People v. Giem*, 2015 COA 176, ¶ 12. And we are mindful that it is for the factfinding court — not us — "to weigh the evidence, determine the credibility of witnesses, and resolve factual disputes." *Id.*

¶ 14    The validity of a defendant's jury trial waiver does not depend on the application of a formula or strict compliance with Rule 23(a)(5)(II)(b). *Walker*, ¶ 19. Rather, as relevant here, the totality of the circumstances must show that the defendant's waiver is knowing — he understands "the existence of the right and any other information legally relevant to the making of an informed decision either to exercise or relinquish that right" — and intelligent — he is "fully aware of what he is doing and . . . make[s] a conscious, informed choice to relinquish the known right." *Id.* at ¶ 16 (quoting *People v. Mozee*, 723 P.2d 117, 121 n.4 (Colo. 1986)).

## IV.   Discussion

¶ 15    We first consider the relevant factual findings made by the postconviction court and determine whether they have record

support. Then, we review de novo whether those findings establish a knowing and intelligent jury trial waiver.[2]

### A. Factual Findings

¶ 16 In addition to the findings made in the postconviction court's 2023 order, the relevant findings of fact include those made in its 2019 written order, its oral findings at the evidentiary hearing, and its implicit adoption of the prosecution's arguments. *See People v. Chipman*, 2015 COA 142, ¶ 84. We consider all these findings.

¶ 17 The postconviction court ruled that the prosecution had met its burden of proof based on the following explicit findings:

- Smith initiated the idea of a bench trial with Mr. Brennan.

- Mr. Brennan discussed the pros and cons of a bench trial with Smith "on many occasions over the span of years."

---

[2] We do not address Smith's arguments about his competency because, as the *Smith III* division noted, competency is not the issue he raised in his motion. *See People v. Smith*, slip op. at ¶ 20 (Colo. App. No. 19CA1834, July 7, 2022) (not published pursuant to C.A.R. 35(e)) (*Smith III*); *see also DePineda v. Price*, 915 P.2d 1278, 1280 (Colo. 1996) ("Issues not raised before the district court in a motion for postconviction relief will not be considered on appeal of the denial of that motion.").

- A CMHIP psychologist deemed Smith competent, and nobody disputed Smith's competency at the time of his waiver.

- Mr. Brennan had "an incredibly long history" with Smith, was attentive to Smith's mental health issues, and believed that Smith was competent and understood the nature of a bench trial at the time of his waiver.

- Smith affirmed on the record that he wanted a bench trial and that he was thinking clearly on the day of the waiver.

- Smith never questioned the lack of jurors at his trial.

- Dr. Fukutaki's 2016 opinion about Smith's 2011 competency was speculative and "not the best evidence" of his mental state five years before.

¶ 18 By its ruling, the court also implicitly adopted the prosecution's arguments that

- the court presiding over the waiver hearing was in the best position to determine whether the waiver was knowing and intelligent;

8

- substantial weight should be accorded to the fact that no one expressed concern about Smith's mental health after October 2011, even though his mental health had previously deteriorated multiple times;

- Mr. Brennan's testimony was credible, and Smith's testimony was not;

- Smith repeatedly expressed a preference for a bench trial, articulated legitimate reasons for a bench trial, and "by the time he waived his jury trial right, he understood what it meant."

*See id.*

¶ 19    We defer to the postconviction court's findings regarding weight and credibility.  *See Giem*, ¶ 12; *see also Smith III*, slip op. at ¶ 33.  And we find record support for each of the remaining factual findings in the record.

¶ 20    Contrary to Smith's arguments on appeal, these findings directly address Dr. Fukutaki's testimony and Smith's mental illness, and they include significant evidence beyond Mr. Brennan's testimony and the three-question waiver colloquy.  The court reasonably weighed Mr. Brennan's opinion more heavily and found

it more credible than Dr. Fukutaki's because Mr. Brennan had a long history with Smith and his opinion was contemporaneous with the waiver hearing. It also emphasized the contemporaneous opinion of the CMHIP psychologist and the absence of any mental health concerns raised by the parties in the months following the waiver. These findings demonstrate consideration of the totality of the circumstances and are not clearly erroneous.

### B. Knowing and Intelligent Waiver

#### 1. Knowing

¶ 21 Do the court's factual findings support a legal conclusion that Smith understood the existence of his jury trial right and the relevant information for an informed decision to exercise or relinquish that right? *See Walker*, ¶ 16. We conclude that they do.

¶ 22 The facts that (1) Smith initially suggested a bench trial, (2) he repeatedly expressed a preference for one over a span of years, (3) he articulated legitimate reasons for his preference, and (4) Mr. Brennan discussed the pros and cons of a bench trial with him many times over the years, strongly suggest that Smith knew he was entitled to a jury trial and also knew the ramifications of waiving that right. Mr. Brennan — whose testimony the court

implicitly credited — testified that he specifically informed Smith that "with a jury, we just needed to get through to one person." That information speaks to Crim. P. 23(a)(5)(II)(b)(ii), (iii), and (iv). Mr. Brennan also testified that by the time Smith waived his right to a jury trial, "he knew what that meant." Considering the totality of these facts, we agree with the postconviction court that Smith's waiver was knowing.

## 2. Intelligent

¶ 23    Do the court's factual findings support a legal conclusion that Smith was fully aware of what he was doing when he made a conscious, informed choice to relinquish his right to a jury trial? *See Walker*, ¶ 16. Again, we conclude that they do.

¶ 24    In addition to the facts discussed in Part IV.A, the postconviction court (1) explicitly found that those present at Smith's waiver hearing, including the judge and Smith himself, thought that Smith was aware of what he was doing on that day, and (2) implicitly found that substantial weight should be accorded to those contemporaneous opinions. Moreover, the court found that those opinions were corroborated by Smith's passive acceptance of not having a jury at his trial. We conclude that all of

these facts, together, establish that Smith's waiver was knowing and intelligent.[3]

## V. Disposition

¶ 25 The order is affirmed.

JUDGE JOHNSON and JUDGE SCHOCK concur.

---

[3] Alternatively, Smith challenges the sufficiency of the postconviction court's findings and requests that we remand the case so the court may make more detailed findings. Even if we agree that the postconviction court could have been more detailed, our opinion supports that the findings, both explicit and implicit, are sufficient to permit meaningful appellate review. *People v. Johnson*, 865 P.2d 836, 840 (Colo. 1994).